349 S.W.3d 548 (2010)
In re V.V., A minor child.
No. 01-08-00345-CV.
Court of Appeals of Texas, Houston (1st Dist.).
July 29, 2010.
Dissenting Opinion by Justice Sharp September 23, 2010.
*550 William Michael Thursland, Houston, TX, for appellant.
Erica L. Jackson, Assistant County Attorney, Sandra D. Hachem, Senior Assistant County Attorney, Houston, TX, for appellant.

EN BANC OPINION
JANE BLAND, Justice.
On November 7, 2006, a child was born with opiates in her system. J.V., her putative father, was in jail and not married to the mother, so the state assumed her conservatorship. Testing later confirmed that *551 J.V. is her father. With the child never having left state care, the Department of Family and Protective Services ("DFPS") sought to terminate the father's parental rights, on the ground that he had placed the child in danger. The trial court agreed, and terminated the parental rights of the father to this child.
The father appealed, contending that the evidence is insufficient to support the trial court's decision, and that his trial court counsel was incompetent. A panel of our court reversed the trial court and rendered judgment in favor of the father. The panel held that the father's conduct did not support a finding that he had endangered his child. In an alternative holding, the panel also decided that trial counsel's performance was so deficient that the father was wholly deprived of counsel, and that the father need not show that it was counsel's deficiencies, instead of the father's own conduct, that caused the trial court to terminate his parental rights.
But a parental termination case does not confer the right to parentrather, it adjudicates its forfeit in the absence of any parenting. The father here has not provided care for (nor even inquired to DFPS about) this child. He is a parent in the biological sense only. DFPS twice moved for rehearing en banc, and the panel twice revised its opinion, thus mooting the en banc request. DFPS moved for en banc consideration for the third time. Concluding that the case warranted en banc review, a majority of our court has voted to reconsider this case. See TEX.R.APP. P. 49.7. We hold that the evidence supports the trial court's finding of endangerment. We therefore affirm the decree terminating the parent-child relationship between the father and the child. We further hold that, because the father has made no showing that the outcome of this case probably would be different save for his counsel's performance, as is his burden, the father's claim does not support reversal for ineffective assistance of counsel.
We withdraw the panel's March 25, 2010 opinion, substitute this opinion in its place, and vacate the panel's March 25, 2010 judgment.

Background
At V.V.'s birth, both she and her mother tested positive for opiates, and the mother told a caseworker that the father of the child was in jail for robbery. Four days later, on November 11, 2006, DFPS sued for the protection of the child and for conservatorship. DFPS also sought a paternity test of the child's father. If he could not or would not reunite with his child, then DFPS asked that the trial court terminate his parental rights to the child. Constables served the father with the lawsuit and citation in the Harris County Jail. The father did not appear at the adversary hearing later that day because he was incarcerated.
The trial court appointed an attorney ad litem for the father of the child until paternity was established, in January 2008, when the father appeared in court, and agreed to take a paternity test. The attorney ad litem, now acting as the father's appointed trial counsel, filed an answer on the father's behalf. Meanwhile, the child's mother decided to voluntarily relinquish her parental rights to the child.

The Trial
The case proceeded to a non-jury trial on April 9, 2008. The father's trial counsel informed the trial court that the father was in jail, and he asked the trial court for a bench warrant and a continuance to secure his client's attendance at the trial. The trial court denied counsel's request. DFPS then called its caseworker as a witness.
*552 Counsel for DFPS asked the caseworker about how the child came into state care. Before the witness answered, the trial court stated that it would take judicial notice of the court's file, including "the affidavit that describes the reason the child was taken into care."[1] Counsel made no objection. Thereafter, the caseworker testified that DFPS placed the child with a relative's family for foster care, and that the family was meeting the child's physical and emotional needs. She explained that the father was in jail when this case began, and that constables personally had served him in November 2006. The caseworker recounted that her first contact with the father was in January 2008 when he appeared in court and agreed to a paternity test. The father made no contact with DFPS after testing confirmed that he is the father of the child. The father has not made any attempts to check on his daughter's welfare. She has never been in his care.
The caseworker testified that the father had an extensive criminal record. The DFPS offered documents proving the father's criminal record into evidence, without objection. These records show criminal convictions for: unauthorized use of a car (twice), theft from a person, driving while intoxicated (twice), evading arrest, criminal assault, and felony theft (twice). In addition, the father was charged with aggravated robbery, but the state eventually dismissed this charge due to a missing witness.
Days before the trial in this matter, the father assaulted the child's mother. The state charged him with criminal assault on a family member, and DFPS offered a copy of the resulting criminal charge, without objection. DFPS also offered photos, identified by the caseworker as reflecting the father's assault of the mother. The father's counsel objected to this proffer: "Judge, object, goes to the criminal side." The trial court overruled this objection.
The caseworker further testified that the father has no relatives to care for the child and that he had not bonded with the child. The child had resided with her current family for at least 14 months before the trial. This family has provided a "very stable" environment for the child and she has "very much" bonded with them. The caseworker opined that it was in the best interest of this child to remain in the care of her placement family; and it was not in the child's interest to reside with her father. Finally, the caseworker testified that the father had engaged in conduct that endangered this child, and that the father's parental rights should be terminated because the father had 10 years of repeated criminal history, and had assaulted the child's mother.
The father's trial counsel did not cross-examine the caseworker, who was the only witness at trial. The reporter's record of the trial transcript is 5 pages, plus 38 pages of exhibits evidencing the father's criminal convictions and other charged offenses.
*553 In its termination order, the trial court found that the father had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers pursuant to § 161.001(1)(E) of the Texas Family Code." See TEX. FAM. CODE. ANN. § 161.001(1)(E) (Vernon Supp. 2009) ("The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence ... that the parent has ... engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]"). As required, it further found that terminating the father's parental rights was in the child's best interest. See id. § 161.001(2) (Vernon Supp. 2009). The trial court also terminated the mother's parental rights in accord with her voluntary relinquishment of those rights.

Post-Trial Events
Trial counsel moved for a new trial and filed a statement of appellate points, a request for findings of fact and conclusions of law, and a notice of appeal. The trial court did not file findings or conclusions, and trial counsel never filed a notice of past due findings of fact and conclusions of law. See TEX.R. CIV. P. 297. In his new trial motion, trial counsel contended that his "oral motion for continuance to allow [the father] to be brought over from the Harris County Jail should have been granted." In his statement of appellate points, trial counsel contended that the trial court had erred in denying the father the right to testify because he was available to do so; that the evidence is legally and factually insufficient to support the trial court's termination finding; and that a trial without the attendance of the father violated the father's due process rights. The trial court denied the new trial motion, appointed the father's trial counsel as his appellate counsel, and found the appeal frivolous.
Trial counsel subsequently filed the father's appellate brief in this court, in which he argued that the trial court erred in deciding that this appeal is frivolous, and he asked our court to review the complaints he asserted in the trial court in the father's motion for new trial. After reviewing the record and trial counsel's appellate brief, a panel of this court concluded that the father's appeal is not frivolous, and that the briefing was inadequate. The panel struck trial counsel's brief as inadequate, and abated this appeal with a request to the trial court that it appoint new counsel. The panel ordered new briefing including, if appropriate, a challenge to the effectiveness of trial counsel's assistance.

Child Endangerment
The father argues that no evidence in the record supports the finding that he engaged in conduct that endangered the physical or emotional well being of the child. We disagree. The recordsparse though it isreveals the father's assault on the child's mother days before the parental termination hearing, his bad choices leading to repeated imprisonment, his wholesale lack of parenting beyond the moment of conception, and a child left in the care of the state at birth because the father was in jail and the mother had ingested opiates during the pregnancy. The child was born with opiates in her system, and her mother later voluntarily relinquished her own parental rights. In ruling a parenting forfeit, the trial court reasonably credited the evidence of the parenting void in this child's life and the father's inability to safeguard the child's physical and emotional well-being. A lack of all contact with a child without any proffered excuse and no effort to ensure her safetycoupled with multiple episodes of incarceration and an assault on the motheris legally sufficient to support a *554 termination finding based on endangerment. An infant who is not looked after by either of her parents, as this one was not, undeniably is in serious danger of physical and emotional injury. Settled authorities have upheld termination based on endangerment in these circumstances. Our citizenry accords parental rights "only to those fit to accept the accompanying responsibilities." In re A.V., 113 S.W.3d 355, 361 (Tex.2003) (quoting In re J.W.T., 872 S.W.2d 189, 195 (Tex.1994)); see also TEX. FAM.CODE ANN. § 153.001(a)(2) (Vernon 1999) ("The public policy of this state is to ... provide a safe, stable, and nonviolent environment for the child.").

Standard of Review
A parent's right to the companionship, care, custody, and management of his child is a constitutional interest. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Thus, clear and convincing evidence must support a trial court's decision to terminate a parent's rights. In re J.F.C., 96 S.W.3d 256, 263-64 (Tex.2002). We review that evidence in a light favorable to the trial court's finding of termination, and we assume that the trial court resolved disputed facts in favor of its finding if such an assumption is reasonable. Id. at 266. Clear and convincing evidence is the measure of proof that firmly convinces the fact finder of the truth of the allegations sought to be established. See TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

Legal Sufficiency
The trial court found that the father had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." See id. § 161.001(1)(E).
Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987) ("[I]mprisonment is certainly a factor to be considered by the trial court on the issue of endangerment."); Allred v. Harris County Child Welfare Unit, 615 S.W.2d 803, 806 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.) (evidence of father's commission of numerous robberies was relevant to endangerment determination); Avery v. State, 963 S.W.2d 550, 553 (Tex.App.-Houston [1st Dist.] 1997, no writ) (parent's past criminal conduct, before and after child's birth relevant to showing of inability to parent).[2]
In Boyd, the father of the child was in jail at the child's birth. 727 S.W.2d at 533. He saw the child eight months later upon *555 his release on parole, lived with her for 5 months, and then returned to jail for burglary. Id. The evidence was "vague, at best" as to whether he ever supported the child. Id. He was not married to the mother, and no adjudication of paternity took place until the termination hearing. Id. at 532. Reversing the court of appeals, the Texas Supreme Court concluded that such evidence can support a termination finding based on endangerment. Id. at 533. The Court expressly disagreed with the court of appeals' conclusion that danger under section E "cannot be inferred from parental misconduct." Id. It can.
Boyd's vitality continues unabated. Last year, relying heavily on its principles, the Texas Supreme Court reversed the court of appeals in J.O.A., and found the evidence legally sufficient to support the trial court's termination of the father's rights based on endangerment without any bad conduct directed toward the children involved. In re J.O.A., 283 S.W.3d 336, 345-46 (Tex.2009). It did so because: (1) the father "had a history of domestic violence" toward the mother and had admitted to marijuana use, and (2) he was incarcerated on criminal charges that were later dismissed. Id. at 346. It did so despite the father's efforts, after DFPS involvement, to improve: engaging in supervised visits with his children, securing steady employment, and completing parenting classes. Id. In J.O.A., the high court reaffirmed the principle in Boyd that "endangering conduct is not limited to actions directed toward the child." Id. at 345 (quoting Boyd, 727 S.W.2d at 533).
Here, the father has an extensive criminal history. He was incarcerated in the Harris County Jail in November 2006 at the time the child was born and when DFPS removed the child two days later and sued to terminate his parental rights. He was incarcerated when the final hearing terminating his parental rights took place. While the record in this case does not disclose drug use, it reveals the same irresponsible choices that deprived this child of a parent: repeated criminal conduct leading to incarceration before and after the child's birth, andworse than the father in J.O.A.no effort to care for his daughter when not incarcerated. Four of this father's eight convictions are for felonies, and his offenses include assault and other crimes against the person. A life of crimebased on the number of crimes, the frequency of their commission, and repeated incarcerations over a decadeis evidence from which a reasonable fact finder could infer endangerment to a child committed to the offender's care. While not conduct directed at his child, such conduct is clear and convincing support for the trial court's termination decision based on the ground of endangerment because this conduct placed his infant child in jeopardy. J.O.A., 283 S.W.3d at 347; Boyd, 727 S.W.2d at 533-34 ("endanger" under Section E means to jeopardize the emotional or physical well-being of a child); see also In re C.H., 89 S.W.3d 17, 28 (Tex.2002) (criticizing court of appeals for failing to account for father's pattern of conduct that is "inimical to the very idea of child-rearing," including conduct displaying criminal proclivities and fact that father had seen child only twice).
The dissent discounts Boyd and the cases that follow it and rejects their applicability to these facts by isolating imprisonment as never the sole factor supporting endangerment. In rejecting the trial court's reliance on the father's criminal history to support a finding of endangerment, the dissent rejects the principle that a criminal record can support such a finding, much as the court of appeals in Boyd did. The dissent here does so with more evidence of bad conduct (domestic violence) and less evidence of contact with the *556 child (none). It is here that the dissent departs from pronouncements that we are duty bound to obey. This case is more similar to Boyd than different: it involves imprisonment and other factors, too, namely: (1) the father has not inquired about or supported the child or made any effort to see to her needs, and (2) he assaulted the child's mother two weeks before the hearing, leading to his incarceration, this time for domestic violence.
The dissent strains against the record to infer that no evidence exists to allow for a finding that the father did not care for or check on the welfare of the child during the entirety of her lifealbeit tacitly conceding that he did not do so in the months after he received the results of the paternity test. Such an interpretation does not view the evidence in a light favorable to the fact finder, who saw the questioning of the witness and heard the words spoken, words that were not date restricted. See In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). The record shows:
[Counsel]: He knows he is the father, and since then has he made any contact with the Agency?
[Washington]: No, he has not.
[Counsel]: And has he made any attempts to check on the welfare of the child?
[Washington]: No, he has not.
The trial transcript, now incorporated into the dissent, bears this out: the father has not made any attempt to check on the welfare of this child. Because the child has been in DFPS custody since she was two days old, the father could have had contact with the child only by contacting DFPS. This evidence permits a reasonable inference that the father has had no contact with the child.
Other record evidence, not included in the dissent, further supports this conclusion. The child has not been in the father's care since her birth. The criminal records, admitted into evidence as exhibits without objection, demonstrate the father's incarceration while the child was in state-arranged foster care, including his arrest for domestic assault on the child's mother on March 29, 2008, just days before the April 9 final hearing in this case. Similarly, the affidavit of Charis Heiskill, which contains facts that the trial court judicially noticed without objection, describes a child referred to state care at birth because both she and her mother "tested positive for Opiates" and the father was "in jail for robbery."
The dissent discounts the father's criminal assault on the mother and his arrest for that conduct, conduct that landed him in jail at the time of the termination hearing, by observing that the father had been charged with the offense but not yet convicted. Contrary to the dissent's view, evidence of an assault does not lose all legal significance to a trial court because the parental termination case comes ahead of the criminal trial. Texas courts routinely consider evidence of parent-on-parent physical abuse in termination cases without specifically requiring evidence that the conduct resulted in a criminal conviction. See, e.g., In re W.S.M., 107 S.W.3d 772, 773 (Tex.App.-Texarkana 2003, no pet.) (observing that evidence showed that father beat child's mother while she was pregnant); Allred, 615 S.W.2d at 805 (reciting that father physically abused mother); see also In re K.L.R., 162 S.W.3d 291, 305 (Tex.App.-Tyler 2005, no pet.) (stating that, in modification proceeding, evidence of parent's pending charges is admissible to determine best interest of child); In re M.R., 975 S.W.2d 51, 55 (Tex.App.-San Antonio 1998, pet. denied) (holding same in conservatorship *557 proceeding).[3] The trial court reviewed and considered photographs that displayed the mother's injuries. We must assume that they support its findings because the father does not assign their consideration as error, the trial court overruled the father's objections to their consideration, and no party made them part of the appellate record. See In re D.A.P., 267 S.W.3d 485, 487 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ("Generally, absent a complete record of the proceedings, reviewing courts must presume that the evidence before the trial judge was adequate to support the decision.").
None of the excuses for abandoning this infant girlconfinement in jail, inadequate notice of impending fatherhood, insufficient assistance from the DFPSovercome the fundamental truth that the father's conduct placed this infant in danger. The father has never seen the child, paid support, or made any arrangements to provide her with food, clothing, shelter or care. He has spent a good deal of his adult life engaging in criminal activity or incarcerated. These facts and his assault against the mother days before the hearing were before the trial court. They reflect conduct that jeopardizes this child's physical and emotional well-being.[4] All are reasons that other courts have upheld termination. We reject the father's contention that the evidence does not support a finding of endangerment. We hold that the evidence sufficiently supports the trial court's firm conviction that this father engaged in a course of conduct that endangered the physical and emotional well-being of the child. See TEX. FAM.CODE ANN. § 161.001(1)(E); Boyd, 727 S.W.2d at 531.

Child's Best Interest
The father also challenges the legal and factual sufficiency of the trial court's finding that the child's best interest is served by terminating the father's rights. In determining the best interests of a child, courts examine: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual; (6) the plans for the child by the parent and the individual seeking custody; (7) the stability of the *558 home; (8) the parent's acts or omissions that indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). The Holley factors are not exhaustive; some listed may not apply, while others not included on the list may also be appropriate. C.H., 89 S.W.3d at 27.
Applying these factors, we observe that the child was about a year and a half old at the time of the trial and thus was too young to testify about her desire, but it is undisputed that she has not bonded with her father because he has not taken care of her since her birth. See In re B.M.R., 84 S.W.3d 814, 820 (Tex.App.-Houston [1st Dist.] 2002, no pet.). In contrast, she was "very bonded" with her foster family, and had lived there since she was four months old. The father's frequent incarceration leaves the child without a stable environment and without any reliable source for food, clothing, shelter, and emotional support. The trial court also reasonably could have inferred that the father's consistent, and at times violent, criminal conduct would put a child in his custody in emotional and physical danger now or in the future. The father's pattern of conduct calls into question whether he is capable of parenting. The father has not attempted to seek information about his daughter's well being, let alone reunification with her, save for one appearance in the trial court in which he agreed to take a paternity test. Even after those results confirmed he was the father, he did not inquire about the child or seek to care for her, though free from jail at the time. Instead, he had an altercation with the child's mother and stood accused of criminally assaulting her. The father has not contacted DFPS or sought services that might assist him in improving his parenting skills. The father offered no excuse for his behavior at trial.
In challenging the sufficiency of the evidence of the child's best interest, the father notes that the trial court did not determine whether the child had any special needs, whether the opiates in her system injured her development, and whether DFPS made any effort to contact paternal relatives to care for the child. This ignores the caseworker's testimony that the child is in a kinship placement and is doing well. We conclude that legally and factually sufficient evidence supports the trial court's finding that termination was in the best interest of this child.

Effective Assistance of Counsel
The father further contends that he is entitled to a new proceeding because his trial counsel's performance was so patently deficient that he was denied any meaningful assistance of counsel. The Texas Family Code requires the appointment of counsel to represent an indigent parent who opposes the termination of his parental rights. TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp. 2009). The Texas Supreme Court has held that this statutory right to counsel "embodies the right to effective counsel." In re M.S., 115 S.W.3d 534, 544 (Tex.2003).
According to the father, counsel's performance was so deficient that it was tantamount to having no lawyer at all and therefore triggers a presumption that it changed the outcome of the case. See Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); United States v. Cronic, 466 U.S. 648, 654-55, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984).[5] Our dissenting colleagues *559 agree with this position. Our concurring colleague sides with the DFPS's position that this record does not dictate that counsel offered unreasonable representation given the facts presented.
We do not review claims of trial error in a vacuum. Rather, we must examine the entire record and determine whether the error caused an improper judgment. See Strickland, 466 U.S. at 695, 104 S.Ct. at 2069 (in determining whether prejudice resulted from the deficient performance of counsel, "a court ... must consider the totality of the evidence before the judge or jury"); TEX.R.APP. P. 44.1 (reversible error in a civil case requires the court of appeals to conclude that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals). The standard of review for evaluating ineffective assistance claims in parental termination cases bears this out.

Standard of Review
In evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases, we begin with the standard set forth by the United States Supreme Court for criminal cases in Strickland v. Washington. M.S., 115 S.W.3d at 544-45 (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). Under the Strickland standard, a parent must show both that (1) his attorney's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense. Id. at 545; Strickland, 466 U.S. at 684-87, 104 S.Ct. at 2063-64.

Prejudice and the Second Prong
In its parental termination jurisprudence, the Texas Supreme Court has focused on Strickland's second prong, holding that an ineffective assistance of counsel claim "requires more than merely showing that appointed counsel was ineffective." J.O.A., 283 S.W.3d at 344. The parent must also show that "counsel's deficient performance prejudiced the defense." Id. (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). To show prejudice, the parent "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
Here, the father makes no attempt to demonstrate that counsel's inadequacy caused the trial court to make the wrong decision. Instead, he emphasizes the brevity of the trial transcript of his parental-rights termination trial, and that trial counsel: failed to secure the father's attendance at the trial, and failed to object when the trial court took judicial notice of facts in its file, to object to some of the criminal records DFPS offered that were not authenticated, to properly object to the introduction of evidence of the father's assault on the mother, and to cross-examine *560 the caseworker or to offer any evidence on behalf of the father.
Based on these factors, he suggests that we presume error and ignore the second prong of Strickland. We decline the father's invitation. The Cronic case, upon which the father relies for support for his suggestion, is at one end of the continuum of Strickland cases. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). This case does not match itfor starters, we have no record to determine whether counsel followed his client's instructions with respect to the vigor of his defense, or whether counsel could have invoked any defenses beyond easily cured objections to admissible evidence. See id. at 659 & n. 26, 104 S.Ct. at 2047. This case is not one in which the father was constructively denied counsel because the appointed lawyer "entirely failed" to subject the prosecution's case to meaningful adversarial testing. Cronic, 466 U.S. at 658-59, 104 S.Ct. at 2039; see also Bell v. Cone, 535 U.S. 685, 696, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002). The father had a lawyer, and Justice Keyes's concurrence points out the strengths of that representation in contrast with the dissent's view of its weaknesses. And, the dissent's entire discussion of counsel's poor representation is dictabecause, in the end, the dissent would reverse and render judgment in favor of the father, not grant a new trial based on counsel's ineffectiveness. Whatever wrong trial counsel's failings wrought does not preclude the dissent from concluding that the DFPS's case lacks any legal meritrather, the dissent would hold that this father is a parent by court decree.
Texas law burdens the father seeking reversal of the trial court's decision with demonstrating a reasonable probability that he would have been awarded custody of this child save for his trial counsel's ineptness. See M.S., 115 S.W.3d at 546 ("Counsel's failure to ensure recording of voir dire, the charge conference, and closing arguments does not constitute ineffective assistance of counsel without a showing of harm, and [this parent] has not shown that she was harmed by the lack of a complete record."). When presented with such evidence, DFPS would have the opportunity to rebut itan opportunity not afforded to it when the second prong of Strickland is replaced by appellate fiat. To give an example, the father chastises trial counsel for making an invalid objection to testimony about the father's assault on the child's mother, and the authenticity of documents reflecting the accompanying criminal charges that the trial court admitted into evidence. If the father is put to his Strickland burden, then the DFPS could respond that the father since has been convicted of criminal conduct associated with that assaulta fact that the DFPS has asked us to judicially note. DFPS could also contest the probable success of an objection to this evidence, and the ways it would have cured any of its own proof deficiencies had they been pointed out by the father's trial counsel. See In re J.W., 113 S.W.3d 605, 616 (Tex. App.-Dallas 2003, pet. denied) (failure to object to admission of criminal record not ground for ineffective assistance). It is unlikely that counsel's failures obscured the truth on this matter.
The second prong of Strickland requires a showing that the outcome of this case probably would have been different had counsel done a better job. Having adopted the Strickland standard in parental termination cases, it is the Texas Supreme Court that should reject it when it proves unworkable. It is not unworkable here. As a case that involved both a legal sufficiency challenge and a meritorious ineffective *561 assistance claim, M.S. provides this court with an analytical road map: in that case, the Texas Supreme Court remanded for further consideration of the ineffective assistance claim, where any harm could be examined or cured, but found the evidence legally sufficient to uphold the trial court's finding of endangerment. M.S., 115 S.W.3d at 550 (holding that failure to record proceedings not ineffective without any showing of harm, but remanding to determine whether failure to preserve factual sufficiency was objectively reasonable); see also Cronic, 466 U.S. at 666-67 n. 41, 104 S.Ct. at 2051 ("Should respondent pursue claims based on specified errors made by counsel on remand, they should be evaluated under the standards enunciated in Strickland v. Washington."). Following J.O.A. and the Texas Supreme Court's holding in M.S., we uphold the requirement announced in Strickland's second prong, and we place the burden on the father to show that the outcome of this trial would have been different had counsel provided him with a good defenseand that a good defense was available, had more facts come to light. Because the father did not have that opportunity with new counsel, he may request that we abate the case to the trial court for a hearing to determine whether any deficiency in counsel's performance affected the outcome of the case. If it did, the trial court should make appropriate findings and recommend that we grant a new trial. Such a hearing must be requested and conducted, and any findings and recommendation for new trial be forwarded to this court before the expiration of our plenary power.[6] Absent further proceedings, we uphold the termination order and the trial court's judgment.

Conclusion
A father's right to parent his child is one of constitutional dimensionto a caring father, one of more importance than the right to his own life or liberty. But a child's right to basic human dignity and necessity is no less a right under the law. It, too, must be protected. See A.V., 113 S.W.3d at 361 ("[T]he rights of natural parents are not absolute; protection of the child is paramount." (quoting J.W.T., 872 S.W.2d at 195)). In this case, the father requested that we favor the one over the other to an extraordinary extent, out of conformity with existing precedent, warranting en banc consideration by the court. We affirm the trial court's decree that terminates the father's parental rights to the child. All pending motions are denied as moot.
Justice BLAND, joined by Chief Justice RADACK, and by Justices ALCALA, HANKS, and MASSENGALE, for the en banc court.
Justice JENNINGS, dissenting, joined by Justice HIGLEY.
Justice KEYES, concurring in part and dissenting in part.
Justice SHARP, dissenting, in an opinion to follow.
Justice MASSENGALE, concurring, joined by Justices ALCALA and HANKS.
*562 MICHAEL MASSENGALE, Justice, concurring.
I join the opinion of the en banc court in its entirety. I write separately for the limited purpose of emphasizing that the now-vacated panel opinion unnecessarily departed from the governing precedent of In re M.S.,[1] which established the Texas state-law standard for ineffective-assistance-of-counsel claims arising from proceedings in Texas state courts to terminate parental rights under the Texas Family Code. The standard adopted by the Texas Supreme Court in M.S. is fully adequate to resolve this case without the expansion of Texas family law proposed by the dissenters.
In addressing the question of what standard applies to an ineffective-assistance claim arising from the appointment of counsel in a parental-rights termination case pursuant to section 107.013(a) of the Family Code,[2] the Court held that because the standard announced in Strickland v. Washington[3] "is well-established and fairly straightforward and places a sufficiently high burden on the movant to prove ineffective assistance of counsel ... it is the standard that should apply."[4] The Court described the Strickland standard in terms of a two-pronged inquiry, requiring a showing of both deficient performance by counsel and resulting prejudice to the client.[5]
Through M.S. and its progeny,[6] the Texas Supreme Court has instructed that we review the ineffective-assistance claim presented in this case by applying Strickland's two-pronged test of ineffectiveness and prejudice. Instead of following that precedent, the analysis of the panel opinion *563 skipped the prejudice prong and instead "presumed" prejudice on the facts of this case, relying upon United States v. Cronic.[7] That case, decided on the same day as Strickland, addresses Sixth Amendment scenarios in which the assistance of counsel has been actually or constructively denied "altogether."[8] By applying Cronic's one-step ineffectiveness-only standard, instead of Strickland's two-step ineffectiveness-plus-prejudice standard, the panel opinion diluted a standard which the Texas Supreme Court expressly chose, in part, because it ensured "a sufficiently high burden on the movant to prove ineffective assistance of counsel."[9]
Regardless of whether a Cronic-style analysis may be justified in an appropriate termination case, that issue is not presented by this case, which can be appropriately resolved within the Strickland framework. The dissenters address the following issues relating to the performance of the biological father's trial counsel:
1. failed to bench warrant the father to trial, and failed to put his motion for continuance, based on his need to secure the father's presence at trial, in writing or to verify it;
2. failed to object when the trial court took judicial notice of the contents of DFPS's file;
3. failed to object to the introduction into evidence of Petitioner's Exhibit No. 1, which contained numerous unauthenticated copies of purported criminal records;
4. made the invalid objection "goes to the criminal side";
5. failed to cross-examine the caseworker or to call any witnesses or offer any evidence on the father's behalf; and
6. failed to include in his statement of appellate points a challenge to the legal and factual sufficiency of the evidence supporting the trial court's finding that the father had endangered the child.
These instances of action (e.g. oral motion for continuance and invalid objection at trial) and inaction (e.g. failures to object) are repeatedly characterized by the dissenters as the "failures" of counsel that, in their view, amounted to a "constructive denial" of counsel.
The presumption of prejudice and the application of Cronic were entirely unnecessary because the panel's opinion nevertheless performed the second step of a Strickland analysis without identifying it as such. This analysis of the trial proceedings (1) identified a specific instance of counsel's ineffective performance, and (2) determined that the father was prejudiced as a result. The panel's opinion concluded that the father was prejudiced by counsel's failure to include a legal-sufficiency challenge in his statement of appellate points, because, in their view, the evidence was legally insufficient to support a termination of parental rights pursuant to section 161.001(1)(E) of the Family Code. There was no reason to presume prejudice because the panel found prejudice.
There is no reason to resort to Cronic when Strickland will do. The United States Supreme Court said as much in Bell *564 v. Cone,[10] an 8-1 decision issued in 2002. The Bell Court noted that in Cronic itself the case was remanded for reconsideration under the Strickland factors.[11] However, Bell also acknowledged that Cronic recognized "three situations implicating the right to counsel that involved circumstances `so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"[12] Those situations are as follows:
1. "complete denial of counsel""A trial would be presumptively unfair... where the accused is denied the presence of counsel at `a critical stage,'" i.e., "a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused."[13]
2. "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"[14]
3. "counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected"E.g., Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).[15]
The Court in Bell focused on the second Cronic scenario, in which counsel "entirely fails" to subject the prosecution's case to meaningful adversarial testing[16]just as the dissenters in this case characterize the representation received by the father. With respect to that category of cases, the Court said:
When we spoke in Cronic of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Cronic, supra, at 659, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of Strickland and that of Cronic, this difference is not of degree but of kind.[17]
*565 The reasoning of Bell has been relied upon by at least one other Texas court to reject an invitation to apply Cronic.[18] As explained above, the panel could have employed the Strickland standard to analyze the effect of counsel's failure to include legal sufficiency of the evidence in the statement of appellate points.
The panel's resort to Cronic analysis was both unauthorized by the governing precedents and unnecessary given the adequacy of the governing precedents. As most aptly put by the opinion of our en banc majority, "Having adopted the Strickland standard in parental termination cases, it is the Texas Supreme Court that should reject it when it proves unworkable."
EVELYN V. KEYES, Justice, concurring and dissenting on en banc review.
I agree with the majority of the en banc court that the original panel opinion represents a grave departure from precedent in the review of parental termination cases for the reasons set out in Justice Bland's majority opinion and that it, therefore, merits en banc review under Texas Rule of Appellate Procedure 41.2 to "maintain uniformity of the court's decisions." TEX. R.APP. P. 41.2(c). I also agree with the majority's determination that the record is legally and factually sufficient to support termination of appellant's parental rights on the ground of endangerment of a child. I disagree with the majority's invitation to appellant to file a motion to abate the appeal for remand to the trial court to attempt to establish a record of ineffective assistance of counsel. I believe this procedure is contrary to Texas Supreme Court and Texas Court of Criminal Appeals precedent in ineffective assistance of counsel cases.[1] Thus, I dissent from this part of the majority opinion. I also disagree with the dissenting justices' (the original panel's) application of the standard of review of ineffective assistance in this case.
I would apply the established Strickland standard of review of ineffective assistance of counsel.[2] I would hold that appellant has failed to satisfy the first prong of the Strickland standard because he has failed to show that his trial counsel's performance fell below professional standards. Furthermore, even had appellant made such a showing, it is the appellant's burden on appeal to show prejudice from his counsel's ineffective assistance in order to satisfy the second prong of the Strickland standard. Appellant has failed to make any showing that his parental rights would probably not have been terminated but for his counsel's ineffective performance at trial. Thus, I would also hold that appellant has failed to satisfy the second prong of Strickland. Since he has satisfied neither prong of the standard of review, he has not shown that he received ineffective assistance at trial.
If I were to reach the issue of whether appellant's counsel was ineffective for failing to preserve for appeal the issue of *566 sufficiency of the evidence of endangerment, I would find the evidence both legally and factually sufficient to support termination on this ground for the reasons stated in Justice Bland's opinion and in this opinion.
I would affirm the trial court's judgment terminating appellant's parental rights.

Standard of Review of Ineffective Assistance in Termination Proceedings
In Bermea v. Tex. Dept. of Family & Protective Servs., 265 S.W.3d 34 (Tex.App.-Houston [1st Dist.] 2008), pet. denied sub nom., In re G.B., 264 S.W.3d 742 (Tex. 2008), this Court stated, following In re M.S., 115 S.W.3d 534 (Tex.2003):
In In re M.S., the Texas Supreme Court resolved a split among the courts of appeals and held that parents are entitled to effective assistance in termination proceedings, and it adopted a two-pronged test for evaluating claims of ineffective assistance of counsel based on Strickland v. Washington, 466 U.S. 668, 681, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). 115 S.W.3d 534, 544-45 (Tex.2003); see also TEX. FAM. CODE ANN. § 107.013 (Vernon Supp. 2007) (according right to appointed counsel).
Prior to the supreme court's decision in In re M.S., this Court had already held that the statutory right to counsel in termination cases meant the right to effective assistance of counsel. In re J.M.S., 43 S.W.3d 60, 63 (Tex.App.-Houston [1st Dist.] 2001, no pet.); see also TEX. FAM.CODE ANN. § 107.013. We observed that this right was not only statutory but constitutional in that the United States Supreme Court had unanimously held that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." In re J.M.S., 43 S.W.3d at 63. We further observed that, because "[f]ew consequences of judicial action are so grave as the severance of natural family ties," the Supreme Court had placed termination of parental rights cases in the same category as criminal cases. Id. Like the United States Supreme Court, we adopted the Strickland standard for determining the effectiveness of counsel. Id. (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064); see also In re M.S., 115 S.W.3d at 544-45 (holding that Strickland standard of ineffective assistance of counsel applies to parental termination cases).
Bermea, 265 S.W.3d at 38-39. This Court reiterated:
The right to effective assistance of counsel in termination cases is not only a statutory right but also a constitutional right guaranteed by the due process clause of the Fourteenth Amendment. See M.L.B. v. S.L.J., 519 U.S. 102, 103, 117 S.Ct. 555, 557, 136 L.Ed.2d 473 (1996); In re J.M.S., 43 S.W.3d at 63.
Id. at 41. Finally, we stated:
The constitutional standard for determining the effectiveness of counsel established in Strickland and adopted for parental rights termination cases by this Court in In re J.M.S. and by the Texas Supreme Court in In re M.S. establishes a high hurdle for a parent hoping to reverse termination. The parent must establish that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In re J.M.S., 43 S.W.3d at 63 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). Thus, the test of ineffective assistance in a parental termination case countenances additional delay in *567 the final resolution of the case only in those rare instances in which the deprivation of parental rights caused by the ineffective assistance was of constitutional magnitude.
Id. at 42.
After Bermea was decided by this Court, the Texas Supreme Court reiterated its prior holdings in In re M.S. and In re J.F.C., that, in parental-rights termination cases, an "ineffective assistance of counsel claim raises due process concerns" and that the constitutional Strickland standard of ineffective assistance applies. In re J.O.A., 283 S.W.3d 336, 347 (Tex.2009); see also In re M.S., 115 S.W.3d at 544-45; In re J.F.C., 96 S.W.3d 256, 280 (Tex.2002). It further stated, "An ineffective assistance of counsel claim ... requires more than merely showing that appointed counsel was ineffective. There are two elements to the Strickland standard." In re J.O.A., 283 S.W.3d at 344. Under the first prong of Strickland, the defendant must show that his counsel's performance was deficient, i.e., "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 342 (quoting In re M.S., 115 S.W.3d at 545).
In assessing the first prong, the reviewing court must presume that "`counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient such that a motion for new trial was not warranted." In re J.O.A., 283 S.W.3d at 343 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065).
Under the second prong, "the defendant must show that counsel's `deficient performance prejudiced the defense ... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. at 344 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). In assessing the second prong, "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." In re J.F.C., 96 S.W.3d at 281 (quoting Strickland, 466 U.S. at 696, 104 S.Ct. at 2069).

A. The En Banc Majority's Application of the Strickland Standard of Review
The en banc majority in this case agrees that "in evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases, we begin with the standard set forth by the United States Supreme Court for criminal cases in Strickland v. Washington." Op. at 559 (citing In re M.S., 115 S.W.3d at 544); see also In re J.O.A., 283 S.W.3d at 341-42; In re J.F.C., 96 S.W.3d at 280. However, having stated the correct standard of review, the majority disregards the presumption in Strickland that counsel's conduct falls within the wide range of professional assistance and might be based on strategy or a reasonable professional opinion. See In re J.O.A., 283 S.W.3d at 343. The en banc majority simply recites the allegations in appellant's pleading without any review of the record and presumes, not that appellant's trial counsel's decisions fell within the wide range of reasonable professional assistance, as required by the Strickland standard, but the opposite, namely that "counsel made errors so serious that [he] was not functioning as the `counsel' guaranteed *568 the defendant by the Sixth Amendment.'" Id.
Having incorrectly presumed that appellant's counsel's performance was constitutionally deficient, so that the first prong of Strickland need not be considered, the majority next correctly observes that, under the second prong of Strickland, "Texas law burdens the father seeking reversal of the trial court's decision with demonstrating a reasonable probability that he would have been awarded custody of this child save for his trial counsel's ineptness." Op. at 560. However, despite the supreme court's instruction in In re M.S. and in In re J.F.C. that to prove the second prong of the Strickland standard the appellate court must determine whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors," the en banc majority fails to hold appellant to this burden. In re J.F.C., 96 S.W.3d at 281 (quoting Strickland, 466 U.S. at 696, 104 S.Ct. at 2069); In re M.S., 115 S.W.3d at 549-50. Although it purports to follow the analytical roadmap set out in In re M.S., the majority's analysis is not substantiated by a review of either In re J.O.A. or In re M.S., and the en banc court's subsequent invitation to the father in this case to "request that we abate the case to the trial court for a hearing to determine whether any deficiency in counsel's performance affected the outcome of the case" is foreign to Texas law.
In In re M.S., the supreme court was confronted with the argument by an indigent mother whose parental rights to her five sons had been terminated that her trial attorney had been ineffective because, among things, he had failed to preserve a meritorious factual insufficiency of the evidence claim by failing to file a motion for new trial statutorily required for factual sufficiency review. In re M.S., 115 S.W.3d at 535-36, 543-44. The supreme court concluded that "the fundamental liberty interests at issue were too dear and the risk of erroneous deprivation too significant to countenance the waiver of a parent's appellate rights through procedural neglect." In re J.O.A., 283 S.W.3d at 343 (citing In re M.S., 115 S.W.3d at 549; U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19). It concluded that, under the circumstances of that case, the appellant had satisfied her burden under the first prong of Strickland by proving her counsel's incompetency in failing to preserve her factual insufficiency complaint. In re M.S., 115 S.W.3d at 549.
After cautioning in In re M.S. that it was not holding that every failure to preserve factual sufficiency rises to the level of ineffective assistance, the supreme court set out instructions for the appellate courts in reviewing ineffective assistance in parental-rights termination cases, stating:
[O]ur appellate courts must engage in a review using the established Strickland standards. That is, the appellate court must indulge in the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient such that a motion for new trial was not warranted. As the Court of Criminal appeals has stated, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." In short, the courts must hold the parent's burden [to be] to show that "counsel's performance fell below an objective standard of reasonableness."
The appellate courts must also conduct a review to determine whether counsel's defective performance caused harm; in other words, whether "there is *569 a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." The appellate court will conduct such a review to determine harm as if factual sufficiency had been preserved, under our established factual sufficiency standard in parental-rights termination cases, understanding that the evidentiary burden in such cases is "clear and convincing."
In re M.S., 115 S.W.3d at 549-50 (citations omitted).
Following its own instructions, the court then considered whether the appellant was harmed by her counsel's defective performance, as required to satisfy the second prong of Strickland. Because counsel's ineffectiveness in In re M.S. in failing to file a motion for new trial, as required for factual sufficiency review, could have resulted in harm to the mother whose rights were terminated only if the evidence was, in fact, factually insufficient to support the judgment terminating her parental rights, and because no factual sufficiency review had been done by the appellate court, the supreme court remanded the case to the court with instructions, stating:
[I]f the court of appeals finds that the evidence to support termination was factually insufficient, and that counsel's failure to preserve a factual sufficiency complaint was unjustified and fell below being objectively reasonable, then it must hold that counsel's failure to preserve the factual sufficiency complaint by a motion for new trial constituted ineffective assistance of counsel. In that case, the court of appeals should reverse the trial court's judgment, and remand the case for a new trial.
Id. at 550.
The supreme court reached the same conclusion on the first prong of Strickland in In re J.O.A., namely that the indigent father whose rights were terminated had been deprived of due process by his counsel's unjustified failure to preserve a factual sufficiency claim for review, in that case by failing to file a statutorily required statement of points for appeal. See In re J.O.A., 283 S.W.3d at 340-43. Just as in In re M.S., the supreme court concluded, as had the appellate court below, that the appellant had met his burden of showing that his counsel's performance fell below an objective standard of reasonableness, thereby satisfying the first prong of Strickland. Id.
The supreme court then turned to the second prong of Strickland. In In re J.O.A., the court of appeals, unlike the appellate court in In re M.S., had considered both the legal and the factual sufficiency of the evidence, despite the failure of the appellant's trial counsel to file a statement of points for appeal, and it had found the evidence supporting termination to be both legally and factually insufficient to support termination of the father's parental rights. Id. at 339, 346. The supreme court concluded that the evidence of endangerment, on which termination was predicated, was legally sufficient to support termination. Id. at 346. However, although it did not agree with the court of appeals that the evidence was factually insufficient to support termination, it recognized that, under the Texas Constitution, factual sufficiency review is committed to the courts of appeals and not to the supreme court. Id. at 346-47 (citing TEX. CONST. art. V, § 6). Therefore, because the court of appeals had determined that the evidence at trial was factually insufficient to support the essential finding that the parent had endangered the child, the supreme court remanded the case to the trial court for a new trial on the issue of termination of the father's parental rights. Id. at 347.
*570 Neither in In re M.S. nor in In re J.O.A. did the supreme court conclude, as does the en banc majority in this case, that the evidence was legally and factually sufficient to support terminating a parent's rights, affirm the judgment of the trial court, and then allow the appellant to request abatement to the trial court "for a hearing to determine whether any deficiency in counsel's performance affected the outcome of the case." Op. at 561. Rather, this ruling is directly contrary to the clear instructions for appellate review of ineffective assistance cases under Strickland set out in In re M.S. and quoted above. See In re M.S., 115 S.W.3d at 549-50. Nor is there any precedent in Texas or United States Supreme Court law for such a ruling.
I therefore dissent from this portion of the en banc majority's opinion. I would apply the Strickland standard of review as set out in In re M.S., In re J.M.C., and In re J.O.A. to appellant's ineffective assistance claim.

B. The Dissenting Justices' Application of the Strickland Standard of Review
Unlike the en banc majority, the dissenting justices do not simply presume that appellant's trial counsel's performance was constitutionally ineffective and therefore fail to address appellant's counsel's actual performance under the first prong of Strickland. They review appellant's counsel's performance and conclude not only that it was ineffective, satisfying the first prong of Strickland, but that it was so deficient as to amount to no representation at all and that therefore harm must be presumed under the second prong of Strickland. See Op. at 552. Thus, they would reverse the termination of appellant's parental rights and render judgment that his parental rights are not terminated. Op. at 607.
Unlike the dissent, I would indulge the "strong presumption" that appellant's counsel's performance fell within "the wide range of reasonable professional assistance," including the possibility that counsel's decision not to challenge the factual sufficiency of the evidence of endangerment was based on strategy or a professional opinion that the evidence was factually sufficient. See In re M.S., 115 S.W.3d at 549. I would hold, on the basis of the record in this case, that appellant has not shown that his trial counsel's performance was below professional standards, as required to prove the first prong of Strickland. However, even if I thought that appellant had proved that his counsel's performance was constitutionally deficient, I would still find no reasonable probability that but for the acts and omissions of counsel the outcome of the termination proceedings would have been different. See In re J.O.A., 283 S.W.3d at 344. Thus, I would not conclude that appellant's trial counsel's performance deprived him of a fair trial with a reliable result. See In re J.F.C., 96 S.W.3d at 281.
Appellant's trial counsel was also his original counsel on appeal. He filed a statement of six points for appeal, as provided by section 263.405(b)(2) of the Family Code. See TEX. FAM.CODE § 263.405(b)(2) (Vernon 2008). On appeal, he filed a brief raising only one issue contesting the trial court's finding, pursuant to section 263.405(d)(3), that the appeal was frivolous. See id. § 263.405(d)(3).[3] A three-judge *571 panel of this Court struck the brief, however, and remanded the case to the trial court with orders that the trial court appoint new appellate counsel and that appellant's new counsel brief the issue of ineffective assistance, including the sufficiency of the evidence of endangerment, "if appropriate." Both the original panel opinion and the opinions on en banc review are based on the brief submitted by appellant's new appellate counsel.
Appellant's new appellate counsel acknowledges that appellant's original counsel filed a statement of points listing six points for appeal, finds three of those frivolous, including the argument that the evidence was legally and factually insufficient to show that termination was in the best interest of the child, but then argues that the statement of points was ineffective for failing to include legal and factual insufficiency of the evidence in support of endangerment of the child.
Appellant's new counsel also argues, as did his original counsel, that appellant's trial counsel erred by failing to object to the trial court's taking judicial notice of the contents of the Department of Family Protective Services (DFPS) file on V.V., including the departmental affidavit describing the reasons the child was taken into care. He also observes that appellant's criminal record was offered and admitted into evidence without objection and that photos of the child's mother after her assault by appellant were admitted into evidence over the objection of appellant's trial counsel that they went "to the criminal side."
At the same time, Appellant's brief acknowledges with citations to the record, that caseworker Felicia Washington did testify that appellant's paternity test confirmed that he was the father; that appellant was in jail for assaulting the child's mother when the case began but had appeared in court at the last hearing and had been advised of the date of the final hearing; that appellant had a criminal record; that appellant had not attempted to contact DFPS to check on V.V.'s welfare; that, at the time of the hearing, V.V. had been with a foster family for 14 months, since she was four months old, had bonded with them, and had not been able to bond with appellant; that appellant was unable to show he had any relative who could take care of the child; and that appellant was living with V.V.'s mother, who had tested positive for cocaine at the birth of the child.
In responding to appellant's brief, and after reviewing the record, the dissent concludes that appellant's counsel erred in "fail[ing] to bench warrant [appellant] to trial"; and it faults him for making only an oral motion for a bench warrant, which the trial judge denied, and failing to file a verified motion for continuance. Op. at 587, 588-89. It declares appellant's counsel incompetent for "failing to secure [appellant's] presence at trial," without regard to counsel's motion for new trial and statement of points, both based on the trial court's denial of a bench warrant. See id. The dissent also finds appellant's trial counsel ineffective for failing to object to the trial court's taking judicial notice of the DFPS file and failing to object to the introduction into evidence of "numerous unauthenticated copies" of appellant's criminal records. Op. at 587. Yet it requires no showing by appellant that the trial court erred in taking notice of the DFPS file or that appellant's criminal records could not readily have been authenticated.[4]
*572 Likewise, the dissent complains that appellant's counsel's objection to the admission of photos of the child's mother following her beating by appellant, namely "goes to the criminal side," was "invalid," but it requires no showing by appellant that the photos were actually inadmissible and therefore could have been suppressed with a properly phrased objection. Id. It also calls appellant's trial counsel ineffective for failing to cross-examine the DFPS worker and to call witnesses on appellant's behalf. Id. at 587-88. Yet it requires no showing by appellant that cross-examination of the DFPS's witness would have revealed evidence favorable to appellant or that witnesses who could testify to appellant's fitness as a parent existed and were available to testify but for appellant's counsel's failure to investigate. Finally, the dissent acknowledges that appellant's counsel filed a statement of points for appeal, as required by the Family Code, but it declares him incompetent for failing to challenge the legal and factual sufficiency of the evidence that appellant had endangered the child in his statement of points, without acknowledging that he did challenge the legal and factual sufficiency of the evidence that termination was in the best interest of the child. Id. at 587-88.
In sum, the dissent merely lists and elaborates upon appellant's original counsel's supposed errors, expresses its opinion agreeing with appellant's new counsel that appellant's original counsel was incompetent, and declares that appellant "received no assistance of counsel" and thus "was constructively denied his right to counsel." Id. at 588.
In Bone v. State, 77 S.W.3d 828 (Tex. Crim.App.2002), the Court of Criminal Appeals faced a similar situation in an ineffective assistance of counsel case. It stated,

The court of appeals simply assumed that each of the examples [of attorney conduct] it noted were, in fact, instances of objectively unreasonable and unprofessional conduct. Because the court itself did not discern any particular strategy or tactical purpose in counsel's trial presentation, it therefore assumed that there was none. This inverts the analysis. Under Strickland, the defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission. From this trial record, one could conclude that there were legitimate and professionally sound reasons for counsel's conduct or one could speculate that there were not. Under our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf. His counsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent.
Id. at 836 (emphasis added). The court did not remand the case to allow counsel the opportunity to explain her actions, however, as the en banc majority proposes to do in this case, because "the court of appeals point[ed] to nothing in the record that probably would have, had it been developed more thoroughly, led to a not *573 guilty verdict or a lesser punishment." Id. at 836-37. Thus "there [was] no reason to believe such evidence existed," and, even if there had been, it concluded, "Strickland requires morenot only proof of professional incompetence but also proof of prejudice." Id. The Texas Court of Criminal Appeals held that the court of appeals erred in finding that the appellant's counsel failed to provide competent representation and that it further erred "when it held, without a specific showing of prejudice, that counsel's performance undermined confidence in the conviction." Id.
Here, like the intermediate appellate court overruled in Bone, the dissent speculates that appellant's counsel had no strategy in failing to object to DFPS's evidence or to call character witnesses, but it does not require appellant to prove that there was, is fact, no plausible professional reason for any specific act or omission. See Bone, 77 S.W.3d at 836; see also In re M.S., 115 S.W.3d at 550 (requiring such proof in parental-rights termination cases by "clear and convincing" evidence). Nor does it require appellant to make any showing that facts existed such that, had appellant's counsel performed differently, appellant's parental rights might not have been terminated. Thus here, as in Bone, the dissent "inverts the analysis" required by Strickland. See Bone, 77 S.W.3d at 836.
In my view, the record does not support the conclusion that appellant's counsel's actions were "objectively unreasonable and unprofessional." See Bone, 77 S.W.3d at 836. I would not conclude that appellant's trial counsel was constitutionally ineffective for failing to seek a bench warrant to bring appellant to the termination hearing, because he did seek a bench warrant, and he also stated in his motion for new trial and listed as error in his six-point statement of points for appeal the trial court's refusal to grant the bench warrant. Nor would I conclude that appellant's counsel was constitutionally ineffective for failing to object to the trial court's taking judicial notice of the DFPS file on V.V. because the court was at least arguably justified in taking judicial notice of its readily verifiable contents. See TEX.R. EVID. 201. Nor could I conclude on the basis of the record in this case that appellant's counsel was ineffective for failing to object to the admission of appellant's criminal records or photos of the child's mother after her assault by appellant, because appellant did object to the admission of the photos, if improperly, and there is no indication that either the photos or the criminal records were inadmissible. Nor would I conclude that appellant's counsel could have had no reasonable strategy in failing to cross-examine the DFPS's witness or in failing to call character witnesses, because there is no indication in the record that witnesses existed who could have testified to appellant's fitness as a parent for V.V. or that cross-examination of the DFPS witness about the DFPS's actions would have revealed facts favorable to appellant.
Finally, I would not conclude that appellant's counsel was unprofessional for failing to preserve a claim of insufficiency of the evidence to support a finding that termination was in the child's best interest or a finding of endangerment. Appellant's original counsel did preserve the former claim, and the trial court and his replacement counsel found that point of error frivolous. A finding of endangerment would depend upon much of the same evidence.
In sum, I could not say on the basis of the record that trial counsel had "no plausible professional reason" for the foregoing "specific act[s] or omission[s]" or that there were no "legitimate and professionally sound reasons for counsel's conduct" *574 overall. See Bone, 77 S.W.3d at 836. Nor could I say on this basis that appellant's "counsel made errors that [he] was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." In re J.O.A., 283 S.W.3d at 342 (quoting In re M.S., 115 S.W.3d at 545). Rather, I would presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance," including the possibility that a decision was based on strategy or a reasonable professional opinion. See In re J.O.A., 283 S.W.3d at 343 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065). And I would hold that appellant failed to overcome that presumption. See In re M.S., 115 S.W.3d at 549.
The dissent would hold, however, that appellant's counsel's failure to preserve the claim of insufficiency of the evidence to support a finding of endangerment not only was unprofessional but changed the outcome of the termination proceedings, justifying not only reversal for ineffective assistance and remand, in accordance with In re M.S., 115 S.W.3d at 550, but rendition of judgment that the father's parental rights are not terminated, Op. at 607, a holding without precedent in an ineffective assistance case. I would not so hold.

Sufficiency of the Evidence to Support Termination of Appellant's Rights
The linchpin of this case with respect both to the effectiveness or ineffectiveness of counsel and to affirmance or reversal of the judgment terminating appellant's parental rights is whether the evidence was legally and factually sufficient to support termination. If the evidence was insufficient to support termination because there was insufficient evidence of endangerment, the case should be reversed and remanded for a new trial because appellant's counsel will have been shown to have been ineffective for having failed to preserve this point of error in violation of appellant's constitutional due process rights. And it should be reversed and remanded for a new trial on the merits without abatement for proceedings on appellant's counsel's ineffectiveness in the previous trial (which will have been proved) and without rendition of a judgment that the father's rights are not terminated (which would be unsupported by sufficient evidence). If the evidence at trial was sufficient to support termination, any ineffectiveness of counsel will have had no reversible effect and the judgment terminating appellant's parental rights should be affirmed rather than reversed. See In re J.O.A., 283 S.W.3d at 347; In re M.S., 115 S.W.3d at 550. I turn, therefore, to the legal and factual sufficiency of the evidence to support the trial court's deemed findings of endangerment and best interest of the child and to support the judgment.
When, as here, the legal sufficiency of the evidence supporting termination of parental rights is challenged, the reviewing court looks at all the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. In re J.O.A., 283 S.W.3d at 344; In re J.F.C., 96 S.W.3d at 265-66. The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. In re J.O.A., 283 S.W.3d at 344; In re J.F.C., 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. In re J.O.A., 283 S.W.3d at 344; In re J.F.C., 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *575 In re J.O.A., 283 S.W.3d at 344; In re J.F.C., 96 S.W.3d at 266.
Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. In re J.O.A., 283 S.W.3d at 345; In re J.F.C., 96 S.W.3d at 266. The evidence is factually insufficient in a parental rights termination case if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. In re J.O.A., 283 S.W.3d at 345; In re J.F.C., 96 S.W.3d at 266. The court of appeals should "explain in its opinion `why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.'" In re J.O.A., 283 S.W.3d at 345; see In re J.F.C., 96 S.W.3d at 266-67.
In the absence of a challenge to the factual sufficiency of the evidence, the appellate court must deem an omitted finding in support of the judgment if there is some evidence to support it and the other requirements of the rules of civil procedure have been met. In re J.F.C., 96 S.W.3d at 275-76. Remand to the court of appeals is not required for a factual sufficiency review of a deemed finding that termination was in children's best interest in the absence of a challenge to the factual sufficiency of evidence. Id. at 275.
Applying the foregoing standard of proof to the facts of this case, I agree with the en banc majority that the facts are legally and factually sufficient to support the judgment below, including findings that appellant's acts and omissions endangered V.V. and that termination of appellant's parental rights is in V.V.'s best interest for the reasons stated in the majority's opinion, which I adopt by reference. See In re J.F.C., 96 S.W.3d at 266 ("In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."); id. (stating that, in factual sufficiency review, "the inquiry must be `whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.' ... If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.").
It necessarily follows that appellant's original counsel's failure to preserve the issue of insufficiency of the evidence of endangerment did not violate appellant's due process rights and that his counsel's performance did not, therefore, fall "below an objective standard of reasonableness," so as to be constitutionally ineffective. See In re J.O.A., 283 S.W.3d at 343; In re M.S., 115 S.W.3d at 549. Having concluded that appellant failed to carry his burden of proving that his original counsel behaved unprofessionally, I would necessarily conclude that appellant has failed to show by "clear and convincing" evidence that "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." In re M.S., 115 S.W.3d at 550.
In addition, I find it at least plausible that appellant's trial counsel had a strategy in failing to include legal and factual sufficiency of the evidence of endangerment in his statement of points for appeal based on a reasonable professional conclusion that the facts were both legally and factually sufficient to support termination on that ground and that appeal on that *576 ground would have been frivolous. See In re M.S., 115 S.W.3d at 549 (requiring that court of appeals reviewing proof of first prong of Strickland must "indulge in the `strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient"); Bone, 77 S.W.3d at 836 (requiring, in case under Strickland, appellant to "prove by a preponderance of the evidence that there is, in fact, no plausible professional reason for a specific act or omission"). He might also have had a reasonable strategy for not including in his statement of points the insufficiency of the evidence to support a finding that termination was in V.V.'s best interesta claim he did include in his statement of points but which appellant's newly appointed counsel finds frivolous. See In re M.S., 115 S.W.3d at 549.
Because appellant failed to prove that his counsel's actions deprived him of a trial whose result was reliable and because the evidence is, in my view, legally and factually sufficient to support findings both that appellant's actions endangered the child and that termination is in the best interest of the child, I would hold that appellant's trial counsel was not ineffective and that the trial court did not err in terminating appellant's parental rights to V.V.

Conclusion
I would affirm the judgment of the trial court terminating appellant's parental rights.
TERRY JENNINGS, Justice, dissenting.
Judges should decide the cases that come before them based upon the facts in evidence and the governing law, not upon their moral preferences, desires, or the dictates of their emotions. The "obvious problem" with "results-oriented judging" is that "it produces bad results because it guts the rule of law."[1] It subjects litigants not to the Rule of Law, which can be discerned, understood, and applied, but to judicial whim, which is known only to the judges involved. Accordingly, judges should impartially and dispassionately decide the cases that come before them, and, "[i]nstead of worrying about the result in particular cases, judges should follow the rule of law in thousands of cases because doing so leads to better results than not doing so."[2] In contrast, "result-oriented judging ... produces bad consequences on a system-wide basis."[3]
This Court and the other intermediate appellate courts like it exist to ensure due process of law, the most fundamental and ancient right established in Anglo-American jurisprudence and first articulated in Magna Carta.[4] In doing so, we are to correct the harmful errors of trial courts, including erroneous fact findings. These are solemn duties. When appellate judges fail in fulfilling them, the whole justice system fails.
In this case, the assigned panel, exercising judicial restraint,[5] impartially and dispassionately decided the issues presented *577 to this Court based upon the actual facts in evidence and the governing law. The majority, taking upon itself the roles of advocate and policy maker, has now, in suggesting relief neither requested nor argued for by either party, conditionally affirmed the trial court's judgment. Through its en banc opinion, the majority makes new law, changing the rules after the panel unanimously made its decision under the governing law. The stunning effect of the majority's opinion is that it will shut down all claims for the constructive denial of the right to counsel in termination of parental rights cases, regardless of how egregious the inaction of trial counsel.
In overruling the unanimous panel opinion in this case, the majority does not dispassionately state the pertinent background facts. In fact, it, in large part, considers as fact mere allegations, made for the first time on appeal in briefing and in motions, which are not in the appellate record and are in no way supported by the actual five and one-half page, double spaced, trial transcript, which is set out in its entirety below. Moreover, the majority not only misinterprets the well-established governing law, it, inconsistent with that law, creates out of whole cloth, a conditional affirmancean unnecessary appellate abatement procedure for parents claiming ineffective assistance of trial counsel in termination of parental rights cases to prove up in a trial court what they have already established as a matter of law in an intermediate appellate court.
In reaching for what it considers to be a better result than that compelled by the governing law, the majority sacrifices the fundamental duties that attorneys owe to their clients along with the strict standard of proof necessary to terminate parental rights adopted by the Texas Legislature. The majority has indeed produced a bad consequence on a system-wide basis. Thus, this case reveals a fundamental breakdown in the judicial process in Texas. The majority fails to realize what most Americans, based upon a common experience, have come to understand all too wellgovernment agencies, like all organizations, are capable of "encourag[ing] methods of decision making that make failure even more likely and then inevitable."[6] If allowed to stand, the majority's en banc opinion will not only encourage trial courts to (1) constructively deny parents their statutory right to counsel in parental-rights termination cases and (2) terminate parental rights on less than clear and convincing evidence in summary proceedings, it will make the practices "inevitable."
Accordingly, I dissent.

The Issues Presented
Appellant, Joe Lewis Valencia, challenges the trial court's termination of his parental rights to his minor child. In three issues, Valencia contends that his court-appointed attorney's performance at trial "was so patently deficient that [he] was denied any meaningful assistance of counsel altogether" and the evidence presented against him at trial, as revealed in the five and one-half page trial transcript, is legally and factually insufficient to support the trial court's findings that he had "endangered"[7] the child and that termination *578 of his parental rights is in the child's best interest.
In regard to his first issue, the panel in our original opinion,[8] viewing the entire record before us, stated that "we are compelled to hold that Valencia received no meaningful assistance of counsel and was denied an advocate for his cause." We noted that his "trial counsel idly sat by, doing nothing to ensure Valencia a fair hearing, and he essentially allowed DFPS to terminate Valencia's parental rights without having to prove its case."
In regard to his second issue, the panel noted that the only evidence offered by DFPS on the issue of "endangerment" consisted of copies, mostly uncertified, of criminal records purportedly showing that Valencia, (1) prior to the child's birth, had been convicted of several misdemeanor and state jail felony offenses; (2) at the time of the child's birth, was in jail pending trial for the offense of aggravated robbery, a case which was later dismissed; and (3) after the child's birth, stood accused by information of the misdemeanor offense of assaulting Sandra Flores, the child's biological mother, who had already agreed to relinquish her parental rights. We also noted that the record conclusively establishes that Valencia had never had possession of the child. Accordingly, we held that the evidence is legally insufficient to support the trial court's finding that Valencia, based on his prior history of incarceration for criminal offenses, actually endangered the child.
The unanimous panel reversed that portion of the decree terminating the parent-child relationship between Valencia and the child and rendered judgment that Valencia's parental rights were not terminated.[9]

The Evidence
Facts are stubborn things, and the few facts presented in the paltry record of this case are indeed unyielding.
The clerk's record contains the November 10, 2006 affidavit of DFPS agent C. Heiskill, who testified that DFPS "received a referral alleging the physical abuse" of the child, who was born to Sandra Lynn Flores on November 7, 2006. Both the mother and the child tested positive for opiates, and Flores told Heiskill that Valencia is the father of the child and he was "in jail for robbery." After removing the child from Flores's custody, Heiskill located Valencia in the Harris County Jail, but she could not interview him because he was in quarantine. The State subsequently dismissed the robbery case.
*579 The five and one-half page, double spaced, reporter's record reads more like a proceeding in Star Chamber than a real adversary trial in a Texas courtroom. The transcript of the April 9, 2008 nonjury trial, which under a conservative estimate could not have lasted more than a few minutes, reads, in its entirety, as follows:
[Trial Court]: XXXX-XXXXXJ; In the Interest of [the child]. The Court will take judicial notice of the contents of [its] file. Proceed. Okay.
[Trial Counsel]: Judge, if I may, on behalf of the father, the father was released, we sent him notice to be here today to come. To bring to your attention, he is out of Harris County and in county jail. We're asking for a couple of weeks.
[Trial Court]: Denied.
[DFPS Counsel]: Call my first witness.
[DFPS Counsel]: State your name for the Court.
[Washington]: Felicia Washington.
[DFPS Counsel]: How are you employed?
[Washington]: Caseworker for DFPS.
[DFPS Counsel]: As such, are you assigned to the Valencia case?
[Washington]: Yes, I am.
[DFPS Counsel]: Tell the Court what the goal is in the case?
[Washington]: The goal is unrelated adoption.
[DFPS Counsel]: Adoption. Okay. Could you please tell the Court how the child came into care?
[Washington]: Back in 2007yeah.
[Trial Court]: I will take judicial notice of the contents of its file, that includes the affidavit that describes the reason the child was taken into care.
You may proceed.
[DFPS Counsel]: Where is she currently placed?
[Washington]: Placed in a kinship placement.
[DFPS Counsel]: Is the placement meeting all of the physical and emotional needs?
[Washington]: Yes.
[DFPS Counsel]: Let's talk about Joe Valencia. Originally, the named father; is that correct?
[Washington]: Yes.
[DFPS Counsel]: Mr. Valencia was in jail when this case first started?
[Washington]: Yes.
[DFPS Counsel]: And personally served in November, 2006?
[Washington]: Yes, he was.
[DFPS Counsel]: When was the first time you had contact with him?
[Washington]: The last hearing that we had.
[DFPS Counsel]: Which was in January of
[Washington]: 2008.
[DFPS Counsel]: At the last hearing, Mr. Valencia showed up and offered to take a paternity test?
[Washington]: Yes, he did.
[DFPS Counsel]: Do you know the result of the paternity test?
[Washington]: Yes. The result was, he is the father of the child.
[DFPS Counsel]: He knows he is the father, and since then has he made any contact with the Agency?
[Washington]: No, he has not.
[DFPS Counsel]: And has he made any attempts to check on the welfare of the child?
[Washington]: No, he has hot.
[DFPS Counsel]: And to your knowledge, Mr. Valencia was living with the mother of the child, correct? And this *580 is the mother that tested positive for cocaine at the time of the birth of the child?
[Washington]: Yes.
[DFPS Counsel]: And to your knowledge, does Mr. Valencia have a criminal record?
[Washington]: Yes, he has.
[DFPS Counsel]: And, your Honor, I'm asking for State's Exhibit No. 1, Mr. Valencia's criminal record to be admitted.
(Petitioner's Exhibit No. 1 offered)
[Child's Ad Litem]: No objections.
[Trial Court]: It's admitted.
(Petitioner's Exhibit No. 1 admitted)
[DFPS Counsel]: 749311; burglary of a motor vehicle; DWI; evading arrest; theft; assault; theft; DWI; more unauthorized use of a motor vehicle; and prosecuted as a third defendant for theft and aggravated robbery, which was dismissed due you to a lack school [sic] of witnesses; and also as recentin jail right now for assault of Sandra Flores the mother, and we would like to mark that.
(Petitioner's Exhibit No. 1 offered)
[Trial Court]: Any other exhibit or is that it?
[DFPS Counsel]: That is it right here. These are photos of his assault.
[Trial Counsel]: Judge, object, goes to the criminal side.
[Trial Court]: Overruled.
[Child's Ad Litem]: No objections.
[Trial Court]: They are admitted.[[10]]
(Petitioner's Exhibit No. 1 admitted)[[11]]

*581 [Washington]: That's the mother of the child.
[DFPS Counsel]: Has Mr. Joe Valencia been able to show he has any relatives that could care for the child?
[Washington]: No, he does not.
[DFPS Counsel]: Based on the Court of contact that he has been in and out of jail every year for theat least 10 years, and if he went to jail and the child was placed with him, how would that affect the emotional stability of the child?
[Trial Counsel]: Objection, speculation.
[DFPS Counsel]: So, he has no
[Washington]: Go ahead. That's okay.
[DFPS Counsel]: Has the child been able to bond with Joe?
[Washington]: With Joe?
[DFPS Counsel]: With Joe Valencia?
[Washington]: No.
[DFPS Counsel]: How long has the child been placed with its current caregivers?
[Washington]: 14 months.
[DFPS Counsel]: 14 months. And has the child and family bonded?
[Washington]: Yes, very much.
[DFPS Counsel]: Would it be in the best interest of the child for the child to stay with the family?
[Washington]: Yes.
[DFPS Counsel]: And why?
[Washington]: They've had the child since she was four months old, and the child's in a very stable environment, and the child is bonded to the family.
[DFPS Counsel]: And since Joe has an extensive criminal history, including domestic violence, it would not be in the best interest to return the child to him?
[Washington]: No, to return the child.
[DFPS Counsel]: Based on over 10 years of repeated criminal history including assault of the mother, are you asking that Joe Valencia's rights be terminated and he has engaged in conduct that endangers the physical and emotional well-being of the child?
[Washington]: Yes.
[DFPS Counsel]: No further questions.
[Trial Court]: Cross.
[Trial Counsel]: No questions, Judge.
[Child's Ad Litem]: No questions, your Honor.
[Trial Court]: Petition is granted. TDFPS is appointed PMC. Entry of Judgment, today. Review hearing next 10-20-08. Good luck.
Given this brief record, one can easily compare the actual facts established at trial with what the majority, based on the representations of DFPS, asserts as fact in its opinion. Such a comparison reveals that several of the assertions are either not supported by the record or are objectively false:

---------------------------------------------------------------------
Majority Assertions: What the Record reveals:
---------------------------------------------------------------------
"The record ... reveals ... As revealed above, DFPS
[Valencia's] wholesale lack did not even explore this
of parenting beyond the subject matter in the trial
moment of conception ..." court.

*582
"A lack of all contact with a It relied exclusively upon
child without any proffered Valencia's "extensive criminal
excuse and no effort to history" as its proof
insure her safety ..." that he had endangered the
 child.
"... no effort to care for
his daughter...." As revealed above, DFPS
 merely asked Washington if
"... the father has not inquired Valencia, after he had offered
about or supported to take a paternity
the child or made any effort test, which revealed that he
to see to her needs." is the father's child, had
 "made any contact with the
"The father has never seen Agency" or "made made
the child, paid support, or any attempts to check on
made any arrangements to the welfare of the child?"
provide her with food, She merely answered that
clothing, shelter or care." he had not done either of
 those two things.
---------------------------------------------------------------------
"The father offered no Because Valencia's trial
excuse for his behavior at counsel did not know how
trial." to get him to court,
 Valencia could not appear
 at trial to defend himself.
---------------------------------------------------------------------
"[He] assaulted the child's At the time the trial court
mother." entered its decree, Valencia
 had been accused by information
"The record ... reveals the of the misdemeanor
father's assault on the assault of the child's mother,
child's mother ..." who had already agreed
 to relinquish her parental
 rights.
 DFPS did not produce any
 testimony to prove that
 Valencia had committed the
 offense of assault.
---------------------------------------------------------------------
"The record ... reveals ... In her affidavit, in regard
a child left in the care of to "Facts Necessitating
the state at birth because Removal of the Child,"
the father was in jail and Heiskill testified that
the mother had ingested "[DFPS] received a referral
opiates during the alleging the physical abuse
pregnancy." of [the child] ... [who had]
 tested positive for Opiates...."
 Nothing in Heiskill's affidavit
 testimony in any way
 implicates Valencia or his
 conduct regarding the
 child. Heiskill merely noted
 that "[Valencia] is in jail
 for robbery."
---------------------------------------------------------------------
"... four of this father's Valencia's criminal history
eight convictions are for consists of misdemeanors
felonies." and state jail felony convictions
 for which he, prior to
 the child's birth, had served
 time in either a county or
 state jail facility.
---------------------------------------------------------------------
"The father has not attempted Valencia has never relinquished
to seek ... reunification his parental rights,
with [the child]." and he has maintained this
 appeal for over two years.
---------------------------------------------------------------------

As once emphasized by John Adams, "whatever may be our wishes, our inclinations, or the dictums of our passions, they cannot alter the state of facts and evidence."[12]

Procedural Background
In its November 10, 2006 Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship, DFPS alleged that "Rene Flores" was the child's "father," Valencia was the child's "alleged father," and an "unknown" man was the child's alleged father. DFPS sought a determination of Valencia's parentage, and, if "reunification with [Valencia could] not be achieved," the termination of the parent-child relationship, if any existed, between Valencia and the child. On November 16, 2006, Valencia was served with citation in the Harris County Jail, but he did not appear at the adversary hearing later that same day because he was in jail on a charge that was later dismissed.
The trial court, on May 8, 2007, appointed an attorney ad litem for the "unknown father" of the child. On September 6, 2007, Sandra Flores signed an affidavit of voluntary relinquishment of her parental rights with respect to the child. That same day, Valencia's court-appointed attorney (hereinafter "trial counsel"), with the help of counsel for DFPS, filed a written "Unopposed Motion For Continuance" to bench warrant Valencia to the trial court.[13] On January 3, 2008, trial counsel *583 filed an answer on behalf of Valencia, and Valencia, who appeared in court for the first time, "offered" to take a paternity test, which later established that he is in fact the father of the child.
Three months later, the trial court granted DFPS's petition and entered its Decree For Termination solely on the ground that Valencia had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers pursuant to § 161.001(1)(E) of the Texas Family Code."[14]
On April 24, 2008, Valencia's trial counsel filed a Motion for New Trial and Statement of Appellate Points, a Request for Findings of Fact and Conclusions of Law, and a Notice of Appeal. The record does not contain findings of fact and conclusions of law, nor does it show that trial counsel ever filed a notice of past due findings of fact and conclusions of law.[15] In his new trial motion, trial counsel contended that his "oral motion for continuance to allow [Valencia] to be brought over from the Harris County Jail should have been granted" as Valencia was "within walking distance of the courtroom"; the trial "court could have ordered all parties to mediation to narrow the issues for trial"; a new trial would "not unduly burden" the trial court; a new trial was in the best interest of the child; and justice would not "properly be served" without a new trial.
In his Statement of Appellate Points, Valencia's trial counsel contended that the trial court had erred in denying Valencia access to the court because, as "an inmate at the Harris County Jail," he was "available upon request of the court"; the evidence is legally and factually insufficient to support the trial court's finding that termination of Valencia's parental rights was in the best interest of the child; the trial of the case, in the absence of Valencia, "deprived him of his due process pursuant to the 5th and 14th Amendments to the U.S. Constitution, and Article 1, Sections 13 and 19 of the Texas Constitution" and "his right to equal protection of the laws pursuant to the 5th and 14th Amendments to the U.S. Constitution, and Article 1, Sections 3, 3a, 13, and 19 of the Texas Constitution"; and his appellate points were not frivolous because termination of Valencia's parental rights affected his "constitutionally protected fundamental right to parent."
*584 The trial court, after a hearing held on May 6, 2008, denied Valencia's new trial motion, appointed Valencia's trial counsel to represent him on appeal, and found Valencia's appeal "frivolous."
Valencia's trial counsel subsequently filed in this Court his appellant's brief, in which he argued, in a single issue, that the trial court erred in "determining [Valencia's] appeal to be frivolous" because Valencia's "fundamental right to parent is constitutionally protected." Because the record was incomplete, this Court ordered the court reporter to prepare a record of the May 6, 2008 hearing. After the court reporter responded that the record of the May 6, 2008 hearing could not be located, this Court ordered the court reporter to supplement the record with all recorded testimony and evidence admitted at the April 9, 2008 nonjury trial. Upon receipt of the supplemented record, this Court afforded Valencia's trial counsel the opportunity to review it and file an amended brief. Inexplicably, he filed a "Waiver of Opportunity to File a Supplemental Brief."
After reviewing the entire clerk's record and the five and one-half page trial transcript along with Petitioner's Exhibit No. 1, this Court concluded that Valencia's appeal is not frivolous because Valencia had an arguable basis for challenging the legal and factual sufficiency of the evidence supporting the trial court's finding that he had endangered the child and for challenging the effectiveness of his appointed counsel.[16] This Court struck the brief of Valencia's trial counsel, abated the appeal, and remanded the case to the trial court for the appointment of new appellate counsel. We ordered Valencia to file full briefing on the pertinent issues and, if appropriate, an issue challenging the effectiveness of trial counsel's assistance.

Constructive Denial of Counsel
In his first issue, Valencia argues that because his trial counsel's performance "did not simply consist of errors, omissions or poor trial strategy" and "was so patently deficient," Valencia "was denied any meaningful assistance of counsel altogether" and prejudice to his defense must be "presumed." See Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).
The Texas Supreme Court has held that "an ineffective assistance of counsel claim can be raised on appeal despite the failure to include it in a statement of points." In re J.O.A., 283 S.W.3d 336, 339 (Tex.2009). Thus, Valencia may raise this issue for the first time on appeal notwithstanding the fact that his trial counsel failed to assert it in his statement of appellate points as required by statute. Id.; see TEX. FAM. CODE ANN. § 263.405(i) (Vernon 2008) ("The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of points on which the party intends to appeal or in a statement combined with a motion for new trial.").

Standard of Review
The Texas Family Code requires the appointment of counsel to represent an indigent parent who responds in opposition to a suit filed by a governmental entity in which termination of the parent-child relationship is requested.[17] TEX. FAM.CODE *585 ANN. § 107.013(a)(1) (Vernon Supp. 2009). The Texas Supreme Court has held that this statutory right to counsel "embodies the right to effective counsel." In re M.S., 115 S.W.3d 534, 544 (Tex.2003). In doing so, the supreme court emphasized that "`[i]t would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, as evidenced by the statutory right to appointed counsel, and, on the other hand, not require that counsel perform effectively.'" Id. (quoting In re K.L., 91 S.W.3d 1, 13 (Tex.App.-Fort Worth 2002, no pet.)). Accordingly, the court concluded that the appropriate standard of review to apply in evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases is that set forth by the United States Supreme Court for criminal cases in Strickland v. Washington. Id.
In Strickland, the United States Supreme Court, pursuant to the Sixth Amendment, like the Texas Supreme Court, pursuant to Family Code section 107.013(a)(1), expressly recognized:
That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

466 U.S. at 685, 104 S.Ct. at 2063 (emphasis added). The purpose of the guarantee of counsel in our adversary system of justice is "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Id. at 691-92, 104 S.Ct. at 2067 (emphasis added). Thus, to constitute ineffective assistance, any deficiencies in counsel's performance must be prejudicial to the defense. Id. Such prejudice, depending upon the context, is either legally presumed or, if not, determined by inquiry. Id. at 692, 104 S.Ct. at 2067.
The Supreme Court, in Strickland, expressly explained that in certain contexts, such "prejudice is presumed" and specifically noted:
Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.
Id. (emphasis added). In these circumstances, "an inquiry into prejudice" is simply unnecessary. Id. If the right to counsel in an adversary proceeding has been denied, actually or constructively, how can a court ever justifiably rely on the outcome of the proceeding? As succinctly stated by John Adams, "no [person] in a free country *586 should be denied the right to counsel and a fair trial."[18]
In the infamous sleeping-lawyer case, the United States Court of Appeals for the Fifth Circuit, sitting en banc, emphasized that there is nothing "new" about the rule of presumed prejudice and the rule is "well-established." Burdine v. Johnson, 262 F.3d 336, 348 (5th Cir.2001). As explained by Judge Patrick Higginbotham:
We presume prejudice because experience tells us that an occurrence presents both a high probability of prejudice and a difficulty of "proving it" in any finite sense. The law speaks of presumption not to supply a missing ingredient, but rather to recognize its inevitable presence. Right to counsel at critical stages is only an example of this principle. We simply will not put a person on trial for his life in the absence of counsel.
Id. at 355 (Higginbotham, J. concurring) (emphasis added).
In United States v. Cronic, the Supreme Court expounded upon the principle that prejudice is presumed "if the accused is denied counsel at a critical stage of his trial [or] ... if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) (emphasis added). The Supreme Court explained:
The [Sixth] Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." ... If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated. To hold otherwise "could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."
Id. at 654-55, 104 S.Ct. at 2044 (internal citations omitted). Accordingly, prejudice is presumed in circumstances that make it "unlikely that the defendant could have received the effective assistance of counsel." See id. at 666, 104 S.Ct. at 2051. Why? Because the right to counsel has been denied. See id. at 654, 104 S.Ct. at 2044.
In cases in which counsel for an accused has not entirely failed to subject the prosecution's case to meaningful adversarial testing, but has failed to render adequate legal assistance, prejudice is not legally presumed, and a prejudice inquiry must be conducted. In Strickland, the Supreme Court announced a two-prong test for evaluating such claims. 466 U.S. at 687, 104 S.Ct. at 2064. In regard to a criminal defendant's claim of "actual ineffective assistance of counsel" based on the errors and omissions of his attorney, the defendant must show that (1) his attorney's performance was deficient and fell below an objective standard of reasonableness and (2) the deficient performance prejudiced his defense. Id. at 684-87, 104 S.Ct. at 2063-64. Of course, if counsel entirely fails to subject a case to "meaningful adversarial testing," there is no performance to evaluate.
In regard to the second prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068 (emphasis added); see also Bell v. Cone, 535 U.S. 685, 686, 122 S.Ct. 1843, 1846, 152 L.Ed.2d 914 (2002). The Supreme Court *587 expressly stated that this does not mean that a defendant must "show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. Rather, the term "reasonable probability," as defined by the Supreme Court, means "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068 (emphasis added). Thus,
The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

Id. (emphasis added). The Texas Supreme Court has recently echoed this standard by stating that the focus for the prejudice inquiry is whether counsel's mistakes were "so serious as to deny the defendant a fair and reliable trial." In re B.G., 317 S.W.3d 250, 256 (Tex.2010) (quoting In re J.O.A., 283 S.W.3d at 344 (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064)). The test for prejudice is not, as the majority and our concurring colleague assert, that a defendant must show that, absent counsel's deficient performance, the outcome of his trial would have been different.[19] Contrary to the majority's claim, Strickland simply does not require Valencia to show that his trial "counsel's inadequacy caused the trial court to make the wrong decision."
One can never justify reliance on the outcome of a proceeding in which the right to counsel has been actually or constructively denied. Thus, it makes no sense to further inquire whether there is a reasonable probability, i.e., one sufficient to undermine confidence, that the outcome of such a proceeding would have been different.

Presumed Prejudice
In support of his argument that he received no meaningful assistance of counsel in the trial court and prejudice to his defense must be legally presumed, Valencia emphasizes the shocking brevity of the trial transcript of his parental-rights termination trial and that trial counsel:
1. failed to bench warrant Valencia to trial, and failed to put his motion for continuance, based on his need to secure Valencia's presence at trial, in writing or to verify it;
2. failed to object when the trial court took judicial notice of the contents of DFPS's file;
3. failed to object to the introduction into evidence of Petitioner's Exhibit No. 1, which contained numerous unauthenticated copies of purported criminal records;
4. made the invalid objection "goes to the criminal side";
5. failed to cross-examine Washington or to call any witnesses or offer any evidence on Valencia's behalf; and
6. failed to include in his statement of appellate points a challenge to the legal and factual sufficiency of the evidence supporting the trial court's finding that Valencia had endangered the child.
Based on these fundamental failures to act as an advocate on his behalf at each critical *588 stage of the proceeding below, Valencia asserts that his trial counsel's representation "was so outrageous that it went beyond incompetent and can be rightly characterized as inert."
The record in this case compels the conclusion that Valencia received no meaningful assistance of counsel during the critical pre-trial, trial, and post-trial stages of the parental-rights termination proceeding. Although the trial court below formally appointed a lawyer to represent Valencia, Valencia was constructively denied his right to counsel.
The Fifth Circuit has noted that a "constructive denial of counsel occurs when the defendant is deprived of the guiding hand of counsel." Childress v. Johnson, 103 F.3d 1221, 1228 (5th Cir.1997) (internal citations omitted). The court explained that if "the defendant complain[s] of counsel's errors, omissions, or strategic blunders in the context of an active adversarial representation," then the Strickland two-prong deficient performance standard applies. Id. at 1229. The "critical question in assessing a ... right to counsel claim is whether the [defendant] asserts that he received incompetent counsel, or none at all." Id. at 1230 (emphasis added). If such an argument is made, the rule is that "a constructive denial of counsel occurs when a criminal defendant must navigate a critical stage of the proceedings against him without the aid of `an attorney dedicated to the protection of his client's rights under our adversarial system of justice,'" or when counsel "[abandons] the defense of his client at a critical stage of the ... proceedings." Id. at 1229 (citing United States v. Swanson, 943 F.2d 1070, 1075 (9th Cir.1991)) (emphasis added).
Like the defendant in Childress, Valencia emphasizes that he received no assistance of counsel, that is, "[i]n effect Appellant was not represented by counsel at trial." See 103 F.3d at 1230. The defendant in Childress also outlined a list of the failures of his counsel noting that his counsel (1) never investigated the facts, (2) never discussed the applicable law with him, and (3) never advised him of the rights he would surrender by pleading guilty. Id. at 1223. That Valencia has provided a list of failures does not negate his claim that he received no assistance of counsel. See id. Rather, the magnitude of the failures makes his point that he was constructively denied counsel at each critical stage of the proceeding below.
Moreover, presuming prejudice in this case is in no way, as the majority suggests, inconsistent with Strickland as adopted by the Texas Supreme Court in In re M.S. 115 S.W.3d at 544. Again, the United States Supreme Court, in Strickland, expressly acknowledged that when an accused has been actually or constructively denied the assistance of counsel, prejudice to his defense is "legally presumed." 466 U.S. at 692, 104 S.Ct. at 2067 (emphasis added). Not only is the legal presumption of prejudice in this case consistent with In re M.S., it is consistent with common sense. The actual or constructive denial of counsel in and of itself undermines confidence in the outcome of a trial proceeding because the right to counsel has been denied. Only if a defendant has received some meaningful assistance of counsel is a prejudice inquiry necessary.
In the case before us, Valencia's trial counsel, in his new trial motion, affirmatively represented to the trial court that on the date of trial, Valencia was "within walking distance of the courtroom" and his "oral motion for continuance to allow [Valencia] to be brought over from the Harris County Jail should have been granted." Yet, trial counsel's only effort to secure Valencia's presence at a trial, in which his constitutionally protected parental rights *589 were at stake, was to orally state to the trial court, "To bring to your attention, he is out of Harris County and in county jail. We're asking for a couple of weeks."
Although trial counsel, as revealed in his new trial motion, knew that Valencia was in the Harris County Jail, he did not clearly articulate this fact to the trial court on the trial date and did nothing to timely and properly secure Valencia's presence in court by either obtaining a bench warrant prior to trial or filing a written and verified motion for continuance. See TEX.R. CIV. P. 251. In fact, it is apparent from the face of the record that trial counsel did not even know how to secure Valencia's presence for trial. By failing to secure Valencia's presence at trial, trial counsel completely deprived Valencia of his right to testify on his own behalf and to assist trial counsel in presenting a defense, including the ability to assist trial counsel in cross-examining Washington, the only witness presented against Valencia.
Moreover, by idly sitting by and doing nothing, Valencia's trial counsel essentially relieved DFPS of meeting its burden of proof. This is revealed in the sparse five and one-half page, double spaced, trial transcript. When the trial court, sua sponte, took judicial notice of the contents of DFPS's file, trial counsel failed to object or to do anything to require that DFPS present properly admissible evidence to establish its allegation that Valencia had endangered the child. When DFPS offered into evidence Petitioner's Exhibit No. 1, the packet of copies of purported criminal records, trial counsel, again, failed to object. The only properly certified copies concern the aggravated robbery case, which had been dismissed, and the misdemeanor assault case, which was still pending at the time the trial court entered its decree. See TEX. GOV'T CODE ANN. § 406.013 (Vernon 2005); Tex.R. Evid. 901(7), 902(4). When counsel for DFPS stated, without any authenticating testimony, "These are photos of [Valencia's] assault," trial counsel apparently could not articulate a proper objection, but rather made the nonsensical objection "goes to the criminal side." And when given the opportunity to cross-examine Washington, the only witness that DFPS presented at trial, trial counsel responded, "No questions, judge."
Trial counsel's post-trial representation was also essentially inert. Although he went through the formality of filing his Request for Findings of Fact and Conclusions of Law, he failed to timely file a notice of past due findings of fact after the trial court failed to enter any findings. See TEX.R. CIV. P. 297. In his Motion for New Trial and Statement of Appellate Points, trial counsel made a number of inexplicable contentions. For example, he contended that the trial court erred in denying his "oral motion for continuance" and the trial court, apparently sua sponte, "could have ordered all parties to mediation."
Although trial counsel contended that the evidence presented at trial is legally and factually insufficient to support the trial court's finding that termination of Valencia's parental rights is in the child's best interest, he failed, after a trial that lasted only a few minutes, to challenge the legal and factual sufficiency of the evidence to support the trial court's findings that Valencia had actually "endangered" the child. This is truly remarkable given that the record conclusively shows that Valencia was not determined to be the child's father until after he had submitted to paternity testing and he had never had possession of the child. It is all the more remarkable given that the only "evidence" offered by DFPS on the issue of endangerment *590 consisted of copies, mostly uncertified, of criminal records purportedly showing that Valencia, (1) prior to the child's birth, had been convicted of several misdemeanor and state jail felony offenses; (2) at the time of the child's birth, was in jail pending trial for the offense of aggravated robbery, a case which was later dismissed; and (3) after the child's birth, stood accused of the misdemeanor offense of assaulting Flores, who had already agreed to relinquish her parental rights.
DFPS, citing Strickland's two-prong analysis for analyzing deficient-performance claims, argues that because there is no evidence in the record to show trial counsel's strategy or other reasoning behind his acts and omissions, there is no basis upon which to conclude that his representation was ineffective. However, as noted above, the United States Supreme Court, in Strickland, expressly explained that the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." 466 U.S. at 692, 104 S.Ct. at 2067 (emphasis added). Here, the sparse record amply demonstrates that trial counsel wholly failed to provide Valencia any meaningful assistance of counsel. In fact, the record clearly reveals that trial counsel did not know how to secure his client's presence in court, made no effort to provide a defense, did not ask a single question of DFPS's only witness, did not know how to preserve error, effectively acquiesced in the termination of Valencia's parental rights based upon scant and mostly inadmissible evidence, and, post-trial, did not include in the statement of appellate points a challenge to the legal and factual sufficiency of the scant evidence on the issue of endangerment.
Again, "the right to the assistance of counsel ... envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Strickland, 466 U.S. at 685, 104 S.Ct. at 2063. The right to counsel, thus, "encompasses the right to have an advocate for one's cause." Childress, 103 F.3d at 1228. No prejudice inquiry is necessary "in cases of actual or constructive denial of counsel," "when a defendant can establish that counsel was not merely incompetent but inert[.]" Id. Constructive denial, such as when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," is the difference between "shoddy representation" and "no representation at all." Id. at 1228-29; see also Cronic, 466 U.S. at 659, 104 S.Ct. at 2047; Gochicoa v. Johnson, 238 F.3d 278, 284-85 (5th Cir.2000); Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir.1998).
Thus, the Fifth Circuit presumed prejudice in Childress where the court-appointed trial lawyer "never investigated the facts, never discussed the applicable law with [the defendant], and never advised him of the rights he would surrender by pleading guilty." 103 F.3d at 1223. The court presumed prejudice because it found that trial counsel took a "potted plant approach" to representing Childress; that is, "counsel's role was essentially passive." Id. at 1226 (emphasis added).
The Fifth Circuit, sitting en banc, also presumed prejudice in the sleeping-lawyer case where defense counsel repeatedly slept in trial while evidence was being introduced against the defendant. Burdine, 262 F.3d at 338. The State of Texas argued that "because Burdine [could not] demonstrate precisely when [his lawyer] slept during his trial, he [could] not prove that [the lawyer] slept during critical stages of [the] proceeding." Id. at 347. The court rejected this argument, noting that "the State asks more of Burdine than the Supreme Court or this Court has ever *591 asked of a defendant attempting to show the absence of counsel during a critical stage of trial." Id. A defendant is "not required ... to explain how having counsel would have altered the outcome of his specific case." Id. (emphasis added). Rather, courts are to look to whether "the substantial rights of a defendant may be affected" during that type of proceeding. Id. Thus, once the court accepted the fact that Burdine's counsel slept "during portions of [his] trial on the merits, in particular during the guilt innocence phase when the State's solo prosecuting attorney was questioning witnesses and presenting evidence, there [was] no need to attempt to further scrutinize the record." Id. at 349. As noted by the court:
Unconscious counsel equates to no counsel at all. Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client.... When we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice.

Id. (emphasis added). Likewise, in the case before us, there is simply no basis for assuming that trial counsel exercised judgment on behalf of Valencia.
Three of our colleagues, concurring in the en banc opinion, contend that the panel has erred in concluding that Valencia was constructively denied his right to counsel and presuming prejudice "on the facts of this case." They assert that rather than relying upon the Supreme Court's express affirmation in Strickland that the "[a]ctual or constructive denial of counsel is legally presumed to result in prejudice," the panel should have evaluated the case as one concerning deficient performance and prejudice. In support of their position, our colleagues rely upon Bell. Their reliance is misplaced.
In Bell, the Supreme Court reiterated that a "trial would be presumptively unfair" if defense "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 535 U.S. at 695-96, 122 S.Ct. at 1851. It again explained that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," prejudice to the defendant is presumed. Id. at 697, 122 S.Ct. at 1851 (emphasis added). The Court emphasized that the argument of the defendant in Bell was "not that his counsel failed to oppose the prosecution throughout" the trial, but that he failed to do so only at two "specific points" in the "sentencing" phase of trial. Id. (emphasis added). Thus, it concluded that the two "aspects of counsel's performance" in the sentencing phase that were "challenged by respondentthe failure to adduce mitigating evidence and the waiver of closing argumentare plainly of the same ilk as other specific attorney errors we have held subject to Strickland's performance and prejudice components." Id. at 697-98, 122 S.Ct. at 1851-52. Accordingly, prejudice to the defense was not to be legally presumed. Id.
In fact, as emphasized by the Supreme Court, defense counsel in Bell did subject the prosecution's case to meaningful adversarial testing. He sought to prove that the defendant was not guilty of capital murder by reason of insanity and presented the expert testimony of (1) a clinical psychologist that the defendant suffered from substance abuse and posttraumatic stress disorders related to his military service in Vietnam and (2) a neuropharmacologist about the defendant's history of illicit drug use, which included consuming "rather horrific" quantities and "caused chronic amphetamine psychosis, hallucinations, *592 and ongoing paranoia, which affected [the defendant's] mental capacity and ability to obey the law." Id. at 690, 122 S.Ct. at 1848. Defense counsel also presented the testimony of the defendant's mother, "who spoke of her son coming back from Vietnam in 1969 a changed person, his honorable discharge from service, his graduation with honors from college, and the deaths of his father and fiancée...." Id. Counsel was further "able to elicit through other testimony that [the defendant] had expressed remorse for the killings." Id.
In his opening statement to the jury in the punishment phase of the trial, defense counsel "called the jury's attention to the mitigating evidence already before them." Id. at 691, 122 S.Ct. at 1848. He suggested that the defendant was "under the influence of extreme mental disturbance or duress, that he was an addict whose drug and other problems stemmed from the stress of his military service, and that he felt remorse." Id. Counsel "urged the jury that there was a good reason for preserving his client's life if one looked at `the whole man'" and "asked for mercy." Id. Counsel also brought out that his client had been awarded the Bronze Star in Vietnam and successfully objected to the State's proffer of photographs of the victims' decomposing bodies. Id. Defense counsel then strategically waived his final argument to prevent the lead prosecutor, "an extremely effective advocate, from arguing in rebuttal." Id. at 692, 122 S.Ct. at 1848.
Here, in stark contrast, the record clearly reveals that Valencia's trial counsel entirely failed to subject DFPS's case to meaningful adversarial testing at each critical stage of the proceeding below. He did not know how to secure his client's presence in court, made no effort to provide a defense at all, did not call any witnesses, did not ask a single question of DFPS's only witness, did not know how to preserve error, and effectively acquiesced in the termination of Valencia's parental rights based upon scant and mostly inadmissible evidence in a trial that lasted only a few minutes. Moreover, Valencia, unlike the defendant in Bell, specifically argues that because his trial counsel's performance "did not simply consist of errors, omissions or poor trial strategy" and "was so patently deficient," Valencia "was denied any meaningful assistance of counsel altogether" and prejudice to his defense must be "presumed."[20] Valencia's point is that trial *593 counsel's wholesale nonperformance before, after, and throughout the entire exceedingly brief proceeding is not of the same "ilk" as the two errors made by the otherwise active trial counsel in Bell but makes it "abundantly clear that [trial counsel] failed to render any meaningful assistance." His complaint is not one of "shoddy representation," but that he essentially had "no representation at all." See Childress, 103 F.3d at 1228.
A review of the entire record before us compels a holding that Valencia received no meaningful assistance of counsel and was denied an advocate for his cause. There can be no reasonable trial strategy that would call for not securing the presence of one's client at trial and then offering no defense for that client when he is faced with termination of his fundamental parental rights based upon scant and mostly inadmissible evidence. See In re J.O.A., 283 S.W.3d at 342 (concluding that parent has fundamental liberty interest in maintaining custody and control of his child). During trial, trial counsel idly sat by, doing nothing to ensure Valencia a fair hearing, and he essentially allowed DFPS to terminate Valencia's parental rights in a summary proceeding without having to produce legally sufficient, clear and convincing evidence to support its case. Post-trial, he failed to include in the statement of appellate points a challenge the legal and factual sufficiency of the trial court's finding on endangerment, despite the scant evidence DFPS adduced on this issue.
The Supreme Court has emphasized that the right to the effective assistance of counsel "is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Cronic, 466 U.S. at 656, 104 S.Ct. at 2045. The Supreme Court went on to say, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Id. at 659, 104 S.Ct. at 2047.
Taken as a whole, trial counsel's performance can only be seen as, at best, inert, and, at worst, acquiescing in DFPS's efforts to terminate Valencia's parental rights. Trial counsel utterly failed to subject DFPS's case to any meaningful adversarial testing such that the process itself was presumptively unreliable. Because Valencia received no meaningful assistance of counsel and was effectively denied an advocate for his cause, prejudice to his defense must be presumed as a matter of law. See id. Simply put, there is nothing in the record before us which demonstrates that Valencia received the assistance of counsel necessary to justify reliance on the outcome of the summary proceeding. Viewed objectively, a contrary conclusion would be unreasonable.[21]
*594 Accordingly, the panel unanimously sustained Valencia's first issue.[22]

Legal Sufficiency
Having sustained his first issue, the panel appropriately addressed the merits of *595 Valencia's second issue. See In re J.O.A., 283 S.W.3d at 339 (addressing legal sufficiency point not preserved in statement of appellant points as a result of ineffective assistance of counsel). In his second issue, Valencia argues that the evidence is legally and factually insufficient to support termination of his parental rights under section 161.001(1)(E) because there is no evidence in the record that he "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." He asserts that "[t]he record is completely silent as to ... what acts or omissions [he] committed which endangered the child." He notes that although Heiskill, in her affidavit, testified that Flores and the child had tested positive for opiates at the child's birth, nothing in Heiskill's testimony implicated Valencia. He also asserts that the trial court improperly took judicial notice of facts that were subject to dispute and there is no evidence that the "individual(s) identified in the criminal records was actually appellant."

Standard of Review
A parent's right to "the companionship, care, custody, and management" of his children is a constitutional interest "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (internal citation omitted). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Likewise, the Texas Supreme Court has also concluded that "[t]his natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). Consequently,
[T]ermination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent.

Id. (emphasis added).
Because termination "is complete, final, irrevocable, and divests for all time that natural right ..., the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." Id. (citing Santosky, 455 U.S. at 747-48, 102 S.Ct. at 1391-92; Richardson v. Green, 677 S.W.2d 497, 500 (Tex.1984)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2008); In re J.F.C., 96 S.W.3d 256, 264 (Tex.2002). Because the standard of proof is "clear and convincing," the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. In re J.F.C., 96 S.W.3d at 264-66.
Instead, in conducting a legal sufficiency review in a parental-rights termination case, we must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. See id. at 266. In viewing the evidence in the light most favorable to the judgment, we "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," *596 and we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible." In re J.P.B., 180 S.W.3d 570, 573 (Tex.2005) (citing In re J.F.C., 96 S.W.3d at 266).
However, a fact finder may not, from meager circumstantial evidence, reasonably infer an ultimate fact, none more probable than another. Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997). This Court has explained that under the law of evidence, the term "inference" means
[A] truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved.
Marshall Field Stores, Inc. v. Gardiner, 859 S.W.2d 391, 400 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)). Thus, to "infer" a fact, one "must be able to deduce that fact as a logical consequence from other proven facts." Id. In other words, there must be a logical and rational connection between the facts in evidence and the fact to be inferred. United States v. Michelena-Orovio, 702 F.2d 496, 504 (5th Cir.), aff'd on reh'g, 719 F.2d 738 (5th Cir.1983) (en banc). With regard to the sufficiency of evidence in circumstantial evidence cases, one inference cannot be based upon another inference to reach a conclusion. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 728 (Tex. 2003). Such stacking is not considered evidence. Id.
In proceedings to terminate the parent-child relationship brought under section 161.001, DFPS must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp. 2009). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).

Endangerment
To terminate the parent-child relationship on the ground that a parent has "knowingly engaged in criminal conduct," DFPS must prove that the criminal conduct has resulted in the parent's:
(i) conviction of an offense; and
(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of [DFPS's] filing [of its] petition.
TEX. FAM.CODE ANN. § 161.001(1)(Q) (Vernon Supp. 2009) (emphasis added). Here, however, DFPS could not ask the trial court to terminate Valencia's parental rights on the ground that he had "knowingly engaged in criminal conduct" because the most serious criminal offense of which Valencia had been convicted, more than two years prior to the child's birth, was a state jail felony offense. The maximum punishment for a state jail felony is confinement in a state jail for two years. TEX. PENAL CODE ANN. § 12.35(a) (Vernon Supp. 2009).
Thus, based solely upon Valencia's "criminal history," which consisted of several misdemeanor and state jail felony offenses, DFPS asserted, and the trial court found, that Valencia had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." See TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon Supp. 2009) (emphasis added). In support of this finding, DFPS relied on Petitioner's Exhibit *597 No. 1, the packet of copies, only two of which are certified, of criminal complaints and judgments and sentences purportedly made and entered against Valencia. DFPS offered no other testimony from its only witness, Washington, or any other evidence upon which the trial court could have reasonably formed a firm belief or conviction that Valencia had actually endangered the child. In sum, the only evidence offered to show that Valencia had endangered the child was that (1) prior to the child's birth, he had been convicted of several misdemeanor and state jail felony offenses; (2) at the time of the child's birth, he was in jail pending trial for the offense of aggravated robbery, a case which was later dismissed; and (3) after the child's birth, he stood accused by information of the misdemeanor offense of assaulting Flores, who had already agreed to relinquish her parental rights.
Setting aside the statutory requirements of section 161.001(1)(Q) and disregarding the fact that the uncertified criminal history records were inadmissible,[23] intentional criminal activity that exposes a parent to incarceration may be relevant to establish a course of conduct endangering the emotional and physical well being of the parent's children. See Allred v. Harris County Child Welfare Unit, 615 S.W.2d 803, 806 (Tex.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.) (evidence of father's commission of numerous robberies was relevant). However, to support the trial court's finding, the record must contain clear and convincing legally sufficient evidence that Valencia had engaged in "endangering" conduct. "Endanger" means to "expose to loss or injury" or to "jeopardize"; it consists of conduct that is "more than a threat of metaphysical injury" or the "possible ill effects of a less than ideal family environment"; *598 although, a child need not suffer actual physical injury to constitute endangerment. Boyd, 727 S.W.2d at 533. Endangerment can occur through both the acts and omissions of a parent. See In re R.D., 955 S.W.2d 364, 367 (Tex.App.-San Antonio 1997, pet. denied).
Evidence of a parent's past conduct, including a criminal history, may be relevant and admissible if it shows a conscious course of conduct and instability occurring both "before and after" a child's birth. Avery v. State, 963 S.W.2d 550, 553 (Tex. App.-Houston [1st Dist.] 1997, no writ). Imprisonment is a "factor to be considered... on the issue of endangerment." Boyd, 727 S.W.2d at 533. However, the Texas Supreme Court has explained that
Mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child.... [I]f the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under [section 160.001(1)(E)][24] is supportable.
Id. at 533-34 (emphasis added). For example, a trial court would not err in admitting evidence of a parent's "lengthy criminal record" involving narcotics abuse in a case in which the parent had "not altered her behavior." Avery, 963 S.W.2d at 553. However, the termination of parental rights should not be used as punishment in addition to imprisonment for the commission of criminal offenses. In re C.T.E., 95 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).
In Boyd, the trial court entered a decree terminating Boyd's parental rights based on a finding that he had engaged in conduct or knowingly placed his child with persons who had engaged in conduct that endangered the child. Boyd, 727 S.W.2d at 532. The supreme court expressly disapproved of the court of appeals' definition of "danger" and its holding that danger cannot be inferred from parental misconduct. Id. at 533. The gist of Boyd is that to constitute endangerment, it need not be shown that a parent's conduct was directed at the child or that the child actually suffered an injury. Id.
The evidence presented at trial showed that Boyd had been arrested and jailed for the then first degree felony offense of burglary two days before the child's birth; after Boyd was paroled, he lived with the child for five months; he intermittently held three different jobs while out on parole; and, within four months, Boyd was again convicted of another burglary offense and sentenced to five years in prison. Id. At the time the child was taken by DFPS, he had emotional problems, which included sleep disorders, dietary issues, bed-wetting problems, and temper tantrums. Id. The supreme court did not hold, as asserted by the majority, that all "[i]ntentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child." Nor did the supreme court, as asserted by DFPS, hold that the evidence presented was legally sufficient to support the trial court's finding that Boyd had endangered the child; rather, it remanded the case to the court of appeals to consider the issue. Id. at 534. However, the court of appeals did not issue a new opinion on remand.
Here, Washington did testify that Valencia had a "repeated criminal history," but *599 DFPS offered no evidence to establish that Valencia's incarceration for misdemeanors and state jail felonies, none of which involved narcotics, and all of which resulted from offenses committed prior to the child's birth, had the effect of endangering the child. Unlike Boyd, Valencia was not, after the birth of his child, convicted of a first degree felony and sentenced to five years in prison. See id. at 533. In fact, Valencia had, at the time of trial, last been convicted of a state jail felony offense on September 23, 2004, more than two years prior to the child's birth. Washington, in response to a leading question, merely stated her conclusion that because he had a "repeated criminal history," Valencia had engaged in conduct that endangered the physical and emotional well-being of the child. DFPS did not adduce any evidence to support Washington's conclusion or explain how Valencia's criminal history had actually endangered the child.
Again, such evidence of incarceration alone will not support a reasonable inference of actual endangerment, i.e., an inference "deduced as a logical consequence from other facts, or a state of facts, already proved." See Marshall Field, 859 S.W.2d at 400 (quoting BLACK'S LAW DICTIONARY 700 (5th ed. 1979)); see also Michelena-Orovio, 702 F.2d at 504. The panel has not, as asserted by the majority, "discount[ed]" Boyd. Boyd clearly requires something more than "mere imprisonment" to establish, by clear and convincing evidence, a course of conduct that has the effect of endangering the physical or emotional well-being of a child in violation of section 160.001(1)(E). 727 S.W.2d at 533-34. The majority's contrary reading of Boyd is also inconsistent with the Texas Legislature's expressly stated requirements for termination of parental rights for "criminal conduct" listed in Family Code section 161.001(1)(Q).
It is true that Valencia was in the Harris County Jail at the time of the child's birth. However, the case for which he was being held was, as conceded by DFPS, dismissed. He was not sentenced to prison as was Boyd. Also, Petitioner's Exhibit No. 1 does show that Valencia, on the date of trial, stood accused by information of the misdemeanor offense of assaulting Flores. However, DFPS did not present any testimony to prove that Valencia had assaulted Flores, and nothing in the record indicates that, as of the date the trial court entered its decree, he had been convicted of the offense.[25] It is hornbook law that a criminal information cannot be considered as evidence that an accused has committed a criminal offense. Ex parte Dumas, 110 Tex.Crim. 1, 2, 7 S.W.2d 90, 90 (1928); see also United States v. Cox, 536 F.2d 65, 72 (5th Cir.1976) ("[i]t is hornbook law that indictments cannot be considered as evidence"); McLean v. State, 312 S.W.3d 912, *600 917 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (stating jury charge contained appropriate instruction that "criminal information is not evidence of guilt"); Gonzales v. State, 977 S.W.2d 189, 190 (Tex.App.-Austin 1998, pet. ref'd) ("[a]n indictment or information is not evidence"). In regard to the reference of DFPS's counsel to "photos of his assault," the record shows that no photographs were marked as exhibits, authenticated through witness testimony, or admitted into evidence. Only Petitioner's Exhibit No. 1 was admitted into evidence, and the record contains no such photographs.
The majority asserts that in the panel's view "evidence of an assault [loses] all legal significance" when the "parental[-rights] termination case comes ahead of the criminal trial" and the panel would require DFPS to prove that Valencia had been "convicted" of the misdemeanor offense of assault before considering any such assault in determining whether Valencia had endangered the child. However, we simply note the well-established law that a copy of a misdemeanor information, even if certified, does not constitute competent evidence of guilt. DFPS failed to produce competent evidence, either through witness testimony or a record of conviction, that Valencia had committed the misdemeanor offense of assault.
DFPS, disregarding the statutory requirements of section 161.001(1)(Q), argues that a history of incarceration for criminal offenses alone can support a finding of endangerment under 161.001(1)(E). In support of its argument, DFPS relies on In re C.H., 89 S.W.3d 17, 28 (Tex.2002), In re M.R., 243 S.W.3d 807, 819 (Tex.App.-Fort Worth 2007, no pet.), In re J.T.G., 121 S.W.3d 117, 126-27 (Tex.App.-Fort Worth 2003, no pet.), In re U.P., 105 S.W.3d 222, 236 (Tex.App.-Houston [14th Dist.] 2003, pet. denied), In re T.D.C., 91 S.W.3d 865, 873, 880 (Tex.App.-Fort Worth 2002, pet. denied), and In re S.D., 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied). However, in cases in which such a criminal history is relied upon to support a finding of endangerment, including the cases relied upon by DFPS, there is always, consistent with Boyd, other evidence presented that puts the criminal history in the context of a pattern of endangering conduct. See In re C.H., 89 S.W.3d at 21 (parent testified about extensive criminal history, and psychologist testified ten year prison sentence would impede parent's ability to parent); Robinson v. Tex. Dep't of Protective and Regulatory Servs., 89 S.W.3d 679, 682-83 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (criminal history plus parent's testimony that she had long history of narcotics abuse before and after birth of children and father's testimony that children were afraid of mother); Allred, 615 S.W.2d at 805-06 (criminal history plus evidence that father beat mother after he learned she was pregnant and threatened to throw mother down stairs to cause miscarriage); In re M.R., 243 S.W.3d at 819 (criminal history plus testimony that parent used narcotics in front of child and parent's incarceration affected ability to take care of child); In re J.T.G., 121 S.W.3d at 131, 133 (criminal history plus evidence of parent's violence in front of child, abuse as child, and abuse of narcotics and alcohol); In re U.P., 105 S.W.3d at 231 (criminal history plus expert testimony about impact on child and testimony about parent's use of narcotics); In re S.F., 32 S.W.3d 318, 321 (Tex.App.-San Antonio 2000, no pet.) (extensive criminal history plus caseworker's testimony about parent's marijuana use and discipline problems while incarcerated and the effect this had on child); In re S.D., 980 S.W.2d at 763 (criminal history plus testimony that parent abused narcotics *601 and alcohol and had inability to support family).[26]
These cases illustrate that the mere fact that Valencia had a criminal history prior to the birth of the child does not constitute clear and convincing, legally sufficient evidence, on its own, to support a finding under section 161.001(1)(E). Again, Boyd is clear that "if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under [section 160.001(1)(E)] is supportable." 727 S.W.2d at 534 (emphasis added).
For example, in In re J.N.R., this Court held that the evidence was legally sufficient to support the trial court's finding that a father had endangered his child, when, while on parole and participating in a DFPS family service plan, the father, "after knowing his parental rights were in jeopardy, ... continued to engage in criminal activity that resulted in his being jailed." 982 S.W.2d 137, 142 (Tex.App.-Houston [1st Dist.] 1998, no pet.), overruled on other grounds, In re C.H., 89 S.W.3d 17 (Tex.2002). After the father was released from prison and placed on parole, he became an active parent in his child's life for five months. Id. at 140. The father, working with DFPS, agreed to and signed a family service plan, which "required him to agree to stay out of jail, participate in his parole tasks, develop his relationship with [the child], and maintain his employment." Id. The father failed to comply with his agreement when he was arrested on three separate occasions while on parole. Id. at 142. At the time of his last arrest, he was outside the area to which he was restricted under the terms of his parole, and his parole officer testified that he was seeking a revocation of the father's parole. Id. Accordingly, we concluded that this evidence showed that the father, while on parole and after agreeing to the requirements of the family service plan, "continued to engage in conduct that would endanger the emotional well-being of [the child]."[27]Id.
In this case, the record shows that DFPS created a family service plan for Valencia in January 2007 prior to the establishment of his parentage. As per the plan, Washington was to play an active role in assessing Valencia's progress against the plan. However, there is no evidence in the record that Valencia ever received a copy of the plan or even agreed to the plan.[28] Nor is there any evidence *602 that Washington engaged Valencia in any way regarding the plan. In fact, the record shows that Washington first met Valencia at a hearing one year later in January 2008 when Valencia first appeared in the case and offered to take a paternity test. Here, unlike in In re J.N.R., there is no additional evidence that Valencia's criminal history constituted a course of endangering conduct.
At trial, DFPS relied solely upon Valencia's criminal history of misdemeanor and state jail felony offenses to support the trial court's finding that Valencia had actually endangered the child. Now, on appeal, DFPS additionally asserts that Valencia engaged in endangering conduct through his failure to take "swift and appropriate actions in support of [the child] during the pendency of the case or to secure reunification," "his apathetic attitude," and "his failure to take any action to check on the child or initiate visits before or after [he took the paternity test]."[29] In *603 support of its position, the majority has seized upon these assertions, which are not supported by the record. However, "[i]t is axiomatic that an appellate court reviews the actions of a trial court based on the materials before the trial court at the time it acted." Hamm v. Millennium Income Fund, L.L.C., 178 S.W.3d 256, 272 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (quoting Methodist Hosps. of Dallas v. Tall, 972 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1998, no pet.)).
Valencia was in the Harris County Jail in November 2006 at the time the child was born and when DFPS removed the child from Flores's care two days later and sued Valencia to terminate the parent-child relationship. It is clear that Valencia's incarceration pending trial on a case which was later dismissed does not alone constitute endangering conduct. Valencia had had no contact with the child and, because he was in jail, he could not take "swift and appropriate actions in support of [the child]"[30] or appear in court on *604 November 16, 2006, the date of the first adversary hearing and the date that he was served with DFPS's petition. He simply had no time to retain counsel between the time that he was served, while in jail at 8:40 a.m., and the time of the first adversary hearing at 1:00 p.m. Neither could he appear and request the appointment of counsel.
In sum, the only evidence offered by DFPS on the issue of endangerment consisted of copies, mostly uncertified, of criminal records purportedly showing that Valencia had, (1) prior to the child's birth, been convicted of several misdemeanor and state jail felony offenses; (2) at the time of the child's birth, was in jail pending trial for the offense of aggravated robbery, a case which was later dismissed; and (3) after the child's birth, stood accused by information of the misdemeanor offense of assaulting Flores, who had already agreed to relinquish her parental rights. Moreover, the record conclusively establishes that Valencia had never had possession of the child.
Viewing all of the evidence in the light most favorable to the trial court's finding, the trial court could not have reasonably formed a firm belief or conviction that Valencia had engaged in a course of conduct that endangered the physical and emotional well-being of the child. See TEX. FAM.CODE ANN. § 161.001(1)(E). Thus, the panel held that the evidence is legally insufficient to support the trial court's finding that Valencia, based on his prior history of incarceration for criminal offenses, actually endangered the child. See Boyd, 727 S.W.2d at 531.
Accordingly, the panel unanimously sustained Valencia's second issue.

En Banc Reconsideration
Valencia was constructively denied his statutory right to counsel, and his parental rights were terminated in a summary proceeding that lasted only a few minutes. After his court-appointed trial counsel failed to secure Valencia's presence in court so that he could defend himself, trial counsel essentially acquiesced in the termination of Valencia's parental rights. The egregious conduct of counsel and the termination of Valencia's parental rights based on legally insufficient evidence shock the conscience and amount to a gross violation of the Rule of Law.
Accordingly, the panel unanimously reversed that portion of the trial court's decree terminating the parent-child relationship between Valencia and the child and rendered judgment that Valencia's parental rights were not terminated. As demonstrated above, the panel did so thoughtfully and dispassionately, objectively applying the facts in evidence to the governing law after thoroughly reviewing the record and the briefs and hearing the oral arguments of the parties. The panel carefully allowed both sides to thoroughly present their case even through the point of post-submission briefing and a number of motions for rehearing, and the panel thoroughly addressed the arguments made.
As noted by the Fifth Circuit, there is nothing "new" about the rule of presumed prejudice in cases in which the right to counsel has been constructively denied; it is in fact "well-established." Burdine, 262 F.3d at 348. Again, the Supreme Court, in Strickland, specifically noted:
Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.
466 U.S. at 692, 104 S.Ct. at 2067 (emphasis added). Moreover, in a very recent opinion, the Texas Supreme Court has again emphasized that

*605 [T]he private interests affected in a parental rights termination case are of the highest order. As the [United States] Supreme Court has said, natural parents have a "fundamental liberty interest ... in the care, custody, and management of their child [which] does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." We have said that "termination cases implicate fundamental liberties" and that "a parent's interest in maintaining custody of and raising his or her child is paramount."
In re B.G., 317 S.W.3d 250, 257 (Tex.2010) (citing Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982), In re B.L.D., 113 S.W.3d 340, 351-352 (Tex.2003), and In re M.S., 115 S.W.3d at 547) (emphasis added). Again, termination of parental rights proceedings are to be strictly construed. Holick, 685 S.W.2d at 20.
Yet, the majority, disagreeing with the result compelled by the governing law, has taken the case from the assigned panel. It has done so improperly.

Violation of the En Banc Standard
Texas' intermediate courts of appeals "sit in sections as authorized by law," and the "concurrence of a majority of the judges sitting in a section is necessary to decide a case." TEX. CONST. Art. V, § 6. Thus, intermediate appellate judges "sit in panels of three or more, as in the federal circuit courts of appeals." O'Connor v. First Court of Appeals, 837 S.W.2d 94, 96 (Tex.1992).
Unless a court of appeals with more than three justices votes to decide a case en banc, the case "must be assigned for decision to a panel of the court consisting of three justices." TEX.R.APP. P. 41.1(a). The panel's opinion "constitutes the court's opinion, and the court must render a judgment in accordance with the panel opinion." Id. Thus, the panel acts essentially as a three-judge court, possessing full authority to decide the cases before it on behalf of the entire court. Thompson v. State, 89 S.W.3d 843, 856 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of en banc consideration).
Accordingly, in Texas, en banc consideration of a case is disfavored:

En Banc Consideration Disfavored. En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of a court's decisions or unless extraordinary circumstances require en banc consideration.
TEX.R. APP P. 41.2(c). This standard has been described as "exacting," and the failure to follow it raises "fundamental" issues. Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 423-24 (Tex. App.-Houston [14th Dist.] 2001), judgm't vacated without reference to the merits due to settlement by the parties, No. 02-0426, 2003 Tex. Lexis 68 (Tex. May 22, 2003) (mem. op.) (Frost, J. concurring in denial of en banc consideration) (denial of en banc consideration "compelled by the exacting standard for en banc review") (Edelman, J. concurring in denial of en banc consideration) (failure to follow en banc standard raises "fundamental" issues of (1) "How important is it to our system of justice that decisions be reached in an impartial manner, i.e., based on the issues, law, and evidence presented rather than other considerations?" and (2) "What could suggest a greater lack of impartiality than to decide a case based on ... an issue not raised by either party?"). Thus,
The standard for en banc consideration is not whether a majority of the en banc court may disagree with all or a part of *606 a panel opinion. Neither is an assertion that an issue is "important" sufficient. Rather, when there is no conflict among panel decisions, the existence of "extraordinary circumstances" is required before en banc consideration may be ordered.
Thompson, 89 S.W.3d at 856 (Jennings, J., concurring in denial of en banc consideration). In regard to Federal Rule of Appellate Procedure 35, which concerns en banc review in the federal courts of appeal, the Fifth Circuit has noted:
A petition for rehearing en banc is an extraordinary procedure that is intended to bring to the attention of the entire court an error of exceptional public importance or an opinion that directly conflicts with prior Supreme Court, Fifth Circuit or state law precedent....
5TH CIR. R. 35 I.O.P. Petition for Rehearing En Banc. Generally, alleged errors regarding the facts of the case, including sufficiency of the evidence challenges, are "matters for panel rehearing, but not for rehearing en banc." Id.
Here, en banc reconsideration was not at all "necessary" to maintain uniformity with prior First Court of Appeals decisions. Moreover, the panel's holdings in regard to the particularly egregious circumstances presented in this case do not in any way amount to an "extraordinary circumstance" which "requires" en banc consideration. The simple fact is that the majority does not like the "well-established" rule of presumed prejudice and the result compelled by the governing law. As noted above, the "obvious problem" with such "results-oriented judging" is that "it produces bad results because it guts the rule of law."[31] When a court, even to reach what it believes to be a more desirable result in a particular case, fails to perform, dispassionately and impartially, its solemn duty to ensure due process of law, the Rule of Law is violated, and, on that rule, society can no longer depend.

The Majority's Errors
Taking upon itself the role of advocate, the majority has considered as fact what DFPS has merely asserted in its briefing. Appellant courts are supposed to be bound by the record containing the evidence that was before the trial court. See Hamm, 178 S.W.3d at 272. However, as revealed by the trial transcript above, much of what is asserted by DFPS and the majority as fact is either objectively not true or not supported in the record. The majority proceeds to decide the case en banc, conditionally affirming the trial court's judgment. It offers a post-decision abatement, requested by neither party, and it fails to adequately address the actual arguments made by the parties and the pertinent controlling authorities. See TEX.R.APP. P. 47.1.
Taking upon itself the role of policy maker, the majority, in derogation of the "well-established" governing law, creates new law. It, on its own initiative, suggests to Valencia that he request an abatement for a hearing on whether his trial counsel's deficient performance harmed him. Again, neither party has asked for such an abatement to be made after the panel has already decided the case and the majority has conditionally done so. It is interesting to note that in criminal cases, this Court, also in an en banc opinion, has specifically precluded criminal defendants from requesting an abatement to restart the appellate timetables to file new trial motions when trial courts untimely appoint appellate counsel after new trial deadlines have expired. See Benson v. State, 224 S.W.3d *607 485, 488 (Tex.App.-Houston [1st Dist.] 2007, no pet.), overruling, Jack v. State, 64 S.W.3d 694 (Tex.App.-Houston [1st Dist.] 2002, pet. dism'd). More importantly, Valencia simply does not need an abatement to prove up in the trial court the prejudice to his defense that he has already established in this Court as a matter of law. This presents Valencia with no new "opportunity." Rather, in effect, such an abatement would give DFPS a "do-over" to put in the record what it failed to establish when it tried the case.
In support of their conditional affirmance and "abatement" suggestion, the majority relies on In re J.O.A. and In re M.S. Neither case supports the majority's position. In neither case did the Texas Supreme Court abate or remand the parent's ineffective assistance of counsel claim to the trial court for a hearing. In In re J.O.A., the supreme court, after disagreeing with the court of appeals' holding that the evidence was legally insufficient to support termination of a father's parental rights, noted that the court of appeals had also held that the evidence was factually insufficient to support termination. 283 S.W.3d at 347. Accordingly, the supreme court "remand[ed] the cause to the trial court for a new trial." Id. In In re M.S., after holding that a trial counsel's failure to preserve a factual sufficiency challenge in a termination of parental rights case "may constitute ineffective assistance of counsel," the supreme court remanded the case to the court of appeals to "determine whether counsel's failure to preserve the factual sufficiency issue was not objectively reasonable, and whether this error deprived [the mother] of a fair trial." 115 S.W.3d at 550.
Moreover, the majority mischaracterizes what a defendant must actually establish to meet the second prong of Strickland. As expressly explained by the United States Supreme Court in Strickland, a defendant need not, as the majority asserts, show that the outcome of his trial "would have been different had counsel provided him with a good defense" or the errors of counsel determined the outcome of his case. He need not even "show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. Rather, he must simply show a "reasonable probability" that the outcome of the proceeding would have been different, i.e., one sufficient to undermine confidence in the outcome. Id. at 694, 104 S.Ct. at 2068. Again,
The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

Id. (emphasis added). Thus, the majority's bizarre and awkward abatement procedure in not only unnecessary, it is actually pointless.
In regard to the legal sufficiency of the evidence, to the extent that the majority opinion can be read to hold that evidence of Valencia's history of misdemeanor and state jail felony convictions and the fact that he stood accused by information of the misdemeanor assault of Flores is legally sufficient to support the trial court's finding of endangerment, the majority mischaracterizes the Texas Supreme Court's holding in Boyd. Also, the majority's conclusion is not consistent with a strict construction of the statute in favor of the parent. See Holick, 685 S.W.2d at 20. Moreover, the conclusion is not only inconsistent with well-established law, it renders Family Code section 161.001(1)(Q) meaningless. If allowed to stand, the majority's opinion will subject literally thousands *608 of similarly situated parents, male and female, in the Houston area to termination of their parental rights as a post-conviction punishment. Under the majority's en banc opinion, a mother with a criminal history of misdemeanor and state jail felony convictions similar to Valencia's could have her parental rights terminated if she is ever accused of the misdemeanor offense of assault by slapping another person with her hand. This is not the law as intended by the Texas Legislature.
Simply put, the majority has not only taken control of the case from the assigned panel in violation of the en banc standard, it has, in an en banc opinion, committed several errors of such importance to the state's jurisprudence that they should be corrected. See TEX. GOV'T CODE ANN. § 22.001(a)(6) (Vernon 2004).

Conclusion
In sum, the majority, in disregard of the clearly articulated standard for en banc consideration, has taken control of the case from a unanimous panel that had impartially and dispassionately decided the issues presented to it based upon the facts in the record and the "well-established" governing law. In doing so, and in failing in its duties to ensure due process of law and to correct the erroneous fact finding of the trial court, the majority not only excuses the behavior of Valencia's trial counsel and the errors of the trial court, it actually encourages and promotes them. Thus, the majority, in its en banc opinion, "encourage[s] methods of decision making that make failure even more likely and then inevitable."[32]
In accord with the governing law, I would reverse that portion of the trial court's judgment terminating Valencia's parental rights to the child and render judgment that his parental rights are not terminated.
The majority's opposition to the governing law is palpable, its errors are profound, and its action in taking control of this case is simply breathtaking.
JIM SHARP, Justice, dissenting.
The en banc majority reviews the father's legal sufficiency challenge to the trial court's finding on endangerment before discussing his ineffective assistance of counsel complaint. Because of the procedural posture of this case, we may not review a sufficiency challenge to the endangerment finding outside of our review of the father's ineffective assistance of counsel issue. I agree with much of Justice Jennings's reasoning and analysis, and approve of his disposition, but it ought to be reached solely via review and grant of the father's first issue.
The Family Code[1] "bars an appellate court from considering any issue not presented to the trial court in a timely filed statement of points." See In re J.O.A., 283 S.W.3d 336, 341 (Tex.2009). Here, the court below found the father to have "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers pursuant to § 161.001(1)(E) of the Texas Family Code."[2] Nevertheless, no separate and discrete *609 challenge to the legal sufficiency of this endangerment finding was included in the father's statement of points.[3]
In re J.O.A., however, provides a limited exception to section 263.405(i), permitting appellate review of a claim for ineffective assistance of counsel not raised in the statement of points, when the claim involves due process concernsin that case, the deprivation of the parents' right to challenge the sufficiency of the evidence. Id. at 343. Here, the father has raised such a claimalleging that his trial counsel's failure to raise a sufficiency challenge to the court's endangerment finding in the statement of appellate points constituted ineffective assistance because it denied the father the right to challenge this finding. Review of the father's complaint regarding the deprivation of his right to effective assistance of counsel based on his counsel's failure to preserve a sufficiency challenge to the endangerment finding is therefore proper.
We may not, however, reach a sufficiency challenge on appeal that has not been raised in a statement of points as an independent issue. In re J.O.A. does not hold that, once trial counsel is shown to have rendered ineffective assistance, the appellate court may then consider any issues raised on appeal regardless of whether they were raised in the statement of points. Nor did In re J.O.A. decide any sufficiency complaints as distinct issues from the ineffective assistance of counsel claim. Rather, In re J.O.A. simply held that an appellate court may consider a complaint of ineffective assistance of counsel, even when not raised in the statement of points, when the complained-of ineffective assistance was the failure to preserve a sufficiency complaint for appellate review, because such failure rose to the level of a due process violation. Id. at 343, 347.
The In re J.O.A. court analyzed the viability of the sufficiency complaints to determine whether the parents met their burden to show prejudice from their counsel's failure to include a sufficiency complaint in the statement of points. It did not review the parents' separate complaints of legal or factual sufficiency, nor did it authorize direct appellate review of such sufficiency challenges in termination cases when not raised in the statement of points.
Some courts of appeals have construed an initial summary sentence in In re J.O.A.in which the supreme court states that it "agree[s] with the court of appeals that section 263.405(i) is unconstitutional as applied when it precludes a parent from raising a meritorious complaint about the insufficiency of the evidence supporting the termination order"as permitting direct appellate review of any complaint of legal or factual sufficiency raised on appeal in a termination case, even if the complaint *610 is not raised in the statement of points. See, e.g., In re E.H., No. 02-09-134-CV, 2010 WL 520774, at *2, n. 3 (Tex.App.-Fort Worth February 11, 2010, no pet.) (mem. op.) (quoting In re J.O.A., 283 S.W.3d at 339); also In re G.K., No. 09-08-00506-CV, 2009 WL 2616926, at *2 (Tex.App.-Beaumont August 27, 2009, no pet.) (mem. op.) (same).
Despite the rather broad language, such an interpretation is not justified in the context of the facts, procedural posture, and actual analysis and holding of In re J.O.A. Our sister court in In re A.B., discussed this matter in detail and noted this language, but rejected a suggestion that "J.O.A. eliminates the need to comply with 263.405" as to any complaints regarding the sufficiency of the evidence. In re A.B., No. 10-09-00137-CV, 2009 WL 3487790, at *1 (Tex.App.-Waco October 28, 2009, no pet.) (mem. op.). Rather, it explained, In re J.O.A. is an ineffective assistance of counsel case holding only that an ineffective assistance of counsel claim may be raised when there is a failure to file a statement of points by trial counsel which precludes the appellate court from considering a meritorious claim regarding insufficiency of the evidence. Id. at *2. The Waco court, after determining that trial counsel was not ineffective, held that any sufficiency complaint had to be set forth in a statement of points in order to be reviewed on appeal. Id. at *5. Because the appellant did not list his sole issue on appeala challenge to the legal sufficiency of the evidencein a statement of points, the Waco court held that nothing was presented for its review. Id.
This Court has likewise has not construed In re J.O.A. to do away with the requirement under section 263.405(i) that sufficiency complaints must be listed in a statement of points in order to be reviewable on appeal, but has instead read In re J.O.A. as providing an exception permitting the raising of an ineffective assistance of counsel issue even though that complaint was not included in a statement of points. See Hyatt v. Dep't of Family and Protective Servs., No. 01-09-00159-CV, 2009 WL 3400992, at *2, and n. 5 (Tex. App.-Houston [1st Dist.] October 22, 2009, no pet.) (mem. op.).[4] The Texas Supreme Court has very recently described its holding in J.O.A. consistently with our interpretation, discussing the procedural facts in J.O.A., and then stating
We held that by precluding the parent from complaining on appeal of ineffective assistance of counsel in those circumstances, section 263.405(i) violated due process. We further held, based on a full record, that the parent had been denied effective assistance because his appellate issue, insufficiency of the evidence, would have required reversal had it been included in a timely filed statement of appellate points.
In re B.G., 317 S.W.3d 250, 255-56 (Tex. 2010) (footnotes omitted).
Until the present case, our Court has never reviewed an independent complaint of legal insufficiency of the evidence in a termination appeal governed by section 263.405(i) when such an issue was not raised in the statement of points.
As noted by Justice Keyes in her concurring opinion, the Texas Supreme Court *611 has explained how an appellate court should conduct a review for prejudice in an ineffective assistance of counsel complaint alleging the failure to preserve a sufficiency complaint for appellate review, stating
[t]he appellate court will conduct such a review to determine harm as if ... sufficiency had been preserved, under our established ... sufficiency standard in parental-termination cases, understanding that the evidentiary burden in such cases is "clear and convincing."
In re M.S., 115 S.W.3d 534, 550 (Tex.2003) (reviewing complaint of ineffective assistance of counsel for failing to preserve complaint of factual sufficiency for appellate review). In other words, to determine whether an appellant is harmed by his counsel's failure to preserve a sufficiency complaint, an appellate court reviews the sufficiency of the evidence under the normal sufficiency standards. Such a review mirrors the direct review of a sufficiency issue, but is not actually an independent review of a sufficiency challenge as a discrete issue.
And this is what the Supreme court did in J.O.A. It did not directly review an independent sufficiency issue not raised in the statement of points, nor did it expand the appellate courts' authority to directly review sufficiency complaints not raised in the statements of points. Rather, it reviewed the sufficiency of the evidence as part of its analysis of the prejudice prong of the ineffective assistance of counsel claim. See In re J.O.A., 283 S.W.3d at 344.
Accordingly, while I agree with Justice Keyes's characterization of the sufficiency of the evidence to support the termination as the "linchpin," as to the endangerment finding, I agree only to the extent that it pertains to a showing of prejudice from the trial counsel's failure to preserve a sufficiency complaint on appeal as to that finding. I certainly do not believe that we may reach and decide a legal sufficiency complaint not raised in the statement of points independent of a review of an ineffective assistance of counsel claim for not preserving such a complaint, as does the en banc majority opinion. Along with Justice Jennings, I believe the evidence to be legally insufficient, but, because it was not listed in the statement of points, we may not reach the legal sufficiency issue independently on appeal. I would neither review that issue nor grant relief on it. In re M.S. dictates the proper review to be conducted; accordingly, I would review the father's ineffective assistance complaint, hold that he has shown that he was prejudiced by his counsel's failure to include a legal sufficiency challenge on endangerment in the statement of appellate points because the evidence was legally insufficient to support the trial court's finding on endangerment, and then grant relief as to that issue.
As explained by the court in In re M.S., if the appellate court "finds that the evidence to support termination was factually insufficient" and counsel's "failure to preserve a factually sufficient complaint was unjustified and fell below being objectively reasonable, then it must hold that counsel's failure to preserve the factual sufficiency complaint ... constituted ineffective assistance of counsel" and should "reverse the trial court's judgment, and remand the case for a new trial." In re M.S., 115 S.W.3d at 550. The Supreme court's remedy for ineffective assistance of counsel for failing to preserve a meritorious complaint of factual sufficiency for appellate review was thus the same as if it had reached and reviewed a complaint on appeal of factual insufficiency of the evidence.
*612 Here, trial counsel failed to file a statement of appellate points that would have allowed us to reach a meritorious legal sufficiency complaint, a complaint which, had we been able to reach on appeal, would have resulted in a rendition in favor of the father. Accordingly, although there is no direct authority governing the remedy for such ineffective assistance of counsel in the context of parental rights termination cases, surely the proper remedy is the same as the father would have received had a legal sufficiency issue been raised in the statement of points and we had been able to review it on appeala reversal of the judgment and rendition in favor of the appellant. Cf. id.; In re D. J.J., 178 S.W.3d 424, 432 (Tex.App.-Fort Worth 2005, no pet.) (applying remedy that would be applicable if counsel had properly preserved legal sufficiency claim in manner complained of by appellant); see also In re B.G., 317 S.W.3d 250, 258 (holding that when denial of due process caused appellant's issues not to be reached on appeal because of late-filed statement of points, remedy was for court of appeals to consider issues raised in statement of points as if it had been timely filed).
Accordingly, I would grant the father's ineffective assistance of counsel issue, reverse the portion of the judgment terminating the father's rights, and render judgment that his parental rights are not terminated.
NOTES
[1] The clerk's record includes a 3-page affidavit sworn 3 days after the child's birth, which stated:

....
On November 8, 2006, the Texas Department of Family and Protective Services received a referral alleging the physical abuse of [V.V.], by her mother.... The report indicated that [the mother] and the child [V.V.] tested positive for Opiates.
....
[The mother] told me that [J.V.] was the father of [V.V.] and stated that he is in jail for robbery....
I located [J.V.] in the Harris County Jail and attempted to interview him at 1200 Baker Street; however, he was in quarantine. I left the notice of removal for him....
[2] See, e.g., In re M.R., 243 S.W.3d 807, 819 (Tex.App.-Fort Worth 2007, no pet.) (holding that father's imprisonment, along with drug use, criminal conduct, and allowing child to live with known drug users, constitutes endangerment); In re J.T.G., 121 S.W.3d 117, 131 (Tex.App.-Fort Worth 2003, no pet.) (holding that father's incarceration before and during pregnancy, coupled with drug and alcohol abuse, is sufficient to support finding of endangerment); In re U.P., 105 S.W.3d 222, 235-36 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (holding that father's imprisonment, plus supply of drugs to mother during pregnancy and personal drug use, was sufficient to show endangerment); Robinson v. Tex. Dep't of Protective & Regulatory Servs., 89 S.W.3d 679, 686-87 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that mother's imprisonment and drug use in violation of community supervision constitutes endangerment); In re S.D., 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied) (holding that parents' imprisonment, in addition to drug use and continuous criminal activity, is sufficient to support finding of endangerment); see also Padilla v. Dep't of Family & Protective Servs., No. 01-07-00313-CV, 2008 WL 525750, at *1-2 (Tex.App.-Houston [1st Dist.] Feb. 28, 2008, no pet.) (mem. op.).
[3] Rule 404(b) does not require a final conviction as a predicate to admission of extraneous offense evidence of other "wrongs or acts," if that evidence is otherwise relevant and admissible. See TEX.R. EVID. 404(b). The evidence of the assault was relevant. See TEX. FAM.CODE ANN. § 263.307(b)(7) (Vernon 2008) (providing that, when determining best interest of a child in a DFPS permanency hearing, the trial court is to consider "whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home."); In re R.R., 209 S.W.3d 112, 116 (Tex.2006) (per curiam) (holding that trial courts should consider the section 263.307(b) factors when determining child's best interest).
[4] Take no solace in the dissent's suggestion that this child could remain in state care in the future even if this court were to render judgment for the father (as the panel had) because, it theorizes, the father's counsel did not adequately challenge the conservatorship order. In his brief, the father challenges the sufficiency of the evidence and expressly asks in his prayer for relief "that the Court reverse the judgment terminating his parental rights to V.V. and the appointment of DFPS as her sole managing conservator." Even if counsel had not requested such relief, under the dissent's view, such a failure would have amounted to ineffective assistance, given its position that the father should prevail outright on appeal. Even if it was borne out in the briefing, a childhood should not be hobbled by the dim prospect of unending state conservatorship without hope of adoption or a permanent home.
[5] The Texas Supreme Court has held that a parent may raise an ineffective assistance of counsel claim on appeal despite the failure to include it in a statement of points. In re J.O.A., 283 S.W.3d 336, 339 (Tex.2009). Thus, the father may raise this issue on appeal even though trial counsel did not assert it in his statement of appellate points. Id.; see TEX. FAM.CODE ANN. § 263.405(i) (Vernon 2008) ("The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.").
[6] In these unusual circumstancesin which a panel of this court struck the original brief and abated the case for appointment of new counsel well after the case was on appealwe afford the father in this case a limited opportunity to seek abatement and trial court findings of deficient performance and resulting prejudice, similar to Strickland petitioners who seek post-conviction habeas corpus review in the criminal law context. In the ordinary case, such a showing should be made in the trial court post-trial or otherwise be evident from the record. See M.S., 115 S.W.3d at 546.
[1] 115 S.W.3d 534 (Tex.2003).
[2] TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp. 2009) ("In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of ... an indigent parent of the child who responds in opposition to the termination....").
[3] 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
[4] In re M.S., 115 S.W.3d at 545 (quoting with approval L.W. v. Dep't of Children & Families, 812 So.2d 551, 556 (Fla.Dist.Ct.App.2002), overruled on other grounds by S.B. v. Dep't of Children & Families, 851 So.2d 689, 691 (Fla. 2003) (holding that a party in a Florida proceeding to adjudicate child dependency has no right to a collateral proceeding questioning the performance of appointed counsel)). The petitioner in M.S. alleged that her attorney failed to provide competent representation both during and after the termination proceedings, in violation of her right to due process of law. Id. at 543. The Texas Supreme Court implicitly declined the invitation to analyze the ineffective-assistance issue in constitutional terms, addressing it instead in terms of the statutory right bestowed by the Family Code. Id. at 544. This approach is consistent with principles of judicial restraint, including the avoidance of unnecessary constitutional questions. See, e.g., VanDevender v. Woods, 222 S.W.3d 430, 432 & n. 5 (Tex. 2007) ("Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions."). Like M.S., this case need not and should not be decided on constitutional grounds.
[5] In re M.S., 115 S.W.3d at 545 (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064).
[6] See In re J.O.A., 283 S.W.3d 336, 344 (Tex. 2009) ("An ineffective assistance of counsel claim ... requires more than merely showing that appointed counsel was ineffective. There are two elements to the Strickland standard, and, under the second, the defendant must show that counsel's `deficient performance prejudiced the defense ... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064)); In re B.G., 317 S.W.3d 250, 256 (Tex.2010) (same).
[7] 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
[8] Strickland, 466 U.S. at 692, 104 S.Ct. at 2067 (citing Cronic, 466 U.S. at 659 & n. 25, 104 S.Ct. at 2047 & n. 25 ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.")).
[9] In re M.S., 115 S.W.3d at 545.
[10] 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).
[11] Id. at 695, 122 S.Ct. at 1850.
[12] Id. (citing Cronic, 466 U.S. at 658-59, 104 S.Ct. at 2047).
[13] Id. at 695-96, 122 S.Ct. at 1851 (citing Cronic, 466 U.S. at 659, 104 S.Ct. at 2047).
[14] Id. at 696, 122 S.Ct. at 1851 (citing Cronic, 466 U.S. at 659, 104 S.Ct. at 2047).
[15] Id. at 696, 122 S.Ct. at 1851 (citing Cronic, 466 U.S. at 659-62, 104 S.Ct. at 2047-48).
[16] Id. at 686, 122 S.Ct. at 1846.
[17] Id. at 696-97, 122 S.Ct. at 1851; see also Florida v. Nixon, 543 U.S. 175, 190, 125 S.Ct. 551, 562, 160 L.Ed.2d 565 (2004) (characterizing Cronic as a "narrow exception" to Strickland that will be "infrequently" applied, and emphasizing that the Cronic presumption of prejudice applies in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" (quoting Cronic, 466 U.S. at 658, 104 S.Ct. at 2046)); Cannon v. State, 252 S.W.3d 342, 349-50 (Tex.Crim.App.2008) (applying Cronic under circumstances in which "defense counsel declared that he was `not ready for this trial,' that he would `be unable to effectively represent [his] client,' that he could, therefore, `not participate' in the trial," and then "declined to participate in jury selection, declined to enter a plea for his client, declined to make an opening or closing argument to the jury, declined to cross-examine any of the State's witnesses, declined to make any objections, declined to offer any defense, declined to request any special jury instructions, and declined to offer any evidence or argument with respect to punishment").
[18] Allen v. State, No. 03-08-00315-CR, 2009 WL 2341830 (Tex.App.-Austin July 29, 2009, pet. ref'd) (mem. op., not designated for publication) (applying Strickland analysis to ineffective-assistance claim when trial counsel allegedly induced defendant to stipulate to charged conduct).
[1] I believe Texas Supreme Court review is appropriate to decide this issue. See TEX. R.APP. P. 56.1(a)(1), (2), (4)-(6).
[2] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (adopted by Texas Supreme Court for parental rights termination cases in In re M.S., 115 S.W.3d 534, 545 (Tex.2003)).
[3] Section 263.405(g) of the Family Code specifically provides for such an appeal. I would have found appellant's counsel's filing of a brief provided for by section 263.405(g) of the Family Code challenging the trial court's frivolousness finding under section 263.405(d)(3) of the Code to be appropriate professional representation of appellant's due process interests.
[4] The file of which appellant's appointed counsel complains judicial notice was improperly taken includes the affidavit of a case worker from the business records of the DFPS stating the circumstances under which V.V. was taken into the care of DFPS. Texas Rule of Evidence 201 permits a court's taking judicial notice of any "fact ... not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX.R. EVID. 201. This evidence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See id.
[1] ORIGINALISM: A QUARTER-CENTURY OF DEBATE 26 (Steven G. Calabresi ed. 2007) [hereinafter ORIGINALISM].
[2] ORIGINALISM at 26-27.
[3] Id. at 27.
[4] MAGNA CARTA, 1215, c. 39.
[5] In contrast to such restraint, the term "judicial activism" has been defined as a judge "deciding a case on the basis of his [or her] own (usually moral) preferences rather than the governing law." AMERICAN CONSERVATISM: AN ENCYCLOPEDIA 460 (Bruce Frohnen, Jeremy Beer, and Jeffrey O. Nelson eds. 2006).
[6] DIETRICH DÖRNER, THE LOGIC OF FAILURE 10 (Ritz & Robert Kimber trans., Metropolitan Books 1996).
[7] See TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon Supp. 2009).
[8] See Valencia v. Tex. Dep't of Family and Protective Servs., No. 01-08-00345-CV, 2010 WL 1240988, at *9 (Tex.App.-Houston [1st Dist.] Mar. 25, 2010, no pet. h.).
[9] DFPS also petitioned for conservatorship of the child, and the trial court, in its decree terminating Valencia's parental rights, found that appointment of a parent as managing conservator of the child would not be in the best interest of the child because the appointment "would significantly impair the child's physical health or emotional development." See TEX. FAM.CODE. ANN. § 153.131 (Vernon 2008). Although Valencia, in the prayer of his brief, asks this Court to "reverse the appointment of DFPS as [the child's] sole managing conservator," he did not assign a separate issue for our review or provide briefing regarding conservatorship. See TEX.R.APP. P. 38.1(f), (i). Because Valencia does not separately challenge the trial court's order regarding conservatorship, the panel did not disturb that portion of the trial court's decree. See In re J.A.J., 243 S.W.3d 611, 617 (Tex.2007) (holding that, because different evidentiary standards apply, parent must separately challenge termination of parental rights and appointment of conservator when DFPS seeks conservatorship under Texas Family Code section 153.131).
[10] Although the trial court overruled the objection "goes to the criminal side," no photographs were marked as exhibits or actually authenticated through the testimony of a witness. Only Petitioner's Exhibit No. 1 was actually admitted into evidence. When this Court ordered the court reporter to supplement the record with "the reporter's record containing all of the recorded testimony and evidence admitted at the trial," the court reporter responded by filing the trial transcript and only one exhibit, Petitioner's Exhibit No. 1, and not any photographs.
[11] Petitioners Exhibit No. 1 is a packet of copies, only two of which are certified, of criminal complaints and judgments and sentences purportedly entered against Valencia. As conceded by DFPS, the certified copies of documents contained in Petitioner's Exhibit No. 1 reveal that the case against Valencia for the offense of aggravated robbery was dismissed on March 26, 2007. Moreover, although a certified copy of a criminal information, apparently filed on March 29, 2008, accused Valencia of the misdemeanor offense of "Assault-Family Member," nothing indicated that, as of the date that the trial court entered its decree, he had been convicted of the offense.

Inexplicably, counsel for DFPS merely stated, "[t]hese are photos of his assault" and presented no testimony to prove that Valencia had committed the misdemeanor offense of assault. A criminal information cannot be considered evidence that an accused has committed a criminal offense. Ex parte Dumas, 110 Tex.Crim. 1, 2, 7 S.W.2d 90, 90 (1928).
The uncertified copies of criminal complaints and judgments and sentences in Petitioner's Exhibit 1 purport to establish that Valencia was convicted of the following offenses: (1) on April 4, 1997, the offense of unauthorized use of a motor vehicle, punished as a misdemeanor with a sentence of 180 days confinement in the Harris County Jail; (2) on November 11, 1997, the offense of theft from a person, punished as a misdemeanor with a sentence of one year confinement in the Harris County Jail; (3) on April 22, 1998, the offense of driving while intoxicated, a misdemeanor, with a sentence of 60 days in the Harris County Jail; (4) on February 14, 2000, the offense of evading arrest, a misdemeanor, with a sentence of 60 days in the Harris County Jail; (5) on May 30, 2000, the offense of assault, a misdemeanor, with a sentence of 90 days in the Harris County Jail; (6) on June 25, 2002, the offense of driving while intoxicated, a misdemeanor, with a sentence of 90 days in the Harris County Jail; (7) on September 19, 2003, the offense of unauthorized use of a motor vehicle, a state jail felony, with a sentence of 180 days in a state jail; and (8) on September 23, 2004, the offense of theft, a state jail felony, with a sentence of 14 months in a state jail. The punishment for a state jail felony is by confinement in a state jail for any term of not more than two years or less than 180 days and a possible fine not to exceed $10,000. TEX. PENAL CODE ANN. 12.35(a), (b) (Vernon Supp. 2009).
[12] DAVID MCCULLOUGH, JOHN ADAMS 68 (Simon & Schuster 2001).
[13] The motion, which is typed, reads in pertinent part as follows:

1. This Motion is brought by the Harris County Attorney's Office on behalf of the Department of Family and Protective Services, who asks the Court, pursuant to Rule 251, Texas Rules of Civil Procedure, to grant a continuance for the trial; of this cause. As grounds for the requested continuance Movant alleges:
1.1. Additional time is needed to bench warrant the alleged father, Joe Lewis Valencia.
. . . .
The motion contains a signature space, which clearly reads:
 Respectfully submitted,
 MIKE STAFFORD
 HARRIS COUNTY ATTORNEY
 SPN# [...]
 ___________________
 Susan Fillion
 Attorney for Petitioner, Department of
 Family
 and Protective Services
 2525 Murworth Drive, Suite 300
 Houston, TX 77054-1603
Although not signed by her, the signature space also contains the State Bar number and telephone number of Fillion. Stafford and Fillion's information is lined through, and, next to this information appears, in handwriting, the signature, name, and information of Valencia's trial counsel.
[14] See TEX. FAM.CODE. ANN. § 161.001(1)(E) (Vernon Supp. 2009) ("The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence... that the parent has ... engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]").
[15] See TEX.R. CIV. P. 297.
[16] Joe Lewis Valencia v. Dep't of Family and Protective Servs., No. 01-08-00345-CV, (Tex. App.-Houston [1st Dist.] May 6, 2009, order) (panel consisting of Justices Jennings, Alcala, and Higley).
[17] This Court has further recognized that a parent has a constitutional right to counsel in such cases. Bermea v. Tex. Dep't of Family and Protective Servs., 265 S.W.3d 34, 39 (Tex. App.-Houston [1st Dist.] 2008), pet. denied, 264 S.W.3d 742 (Tex.2008) (per curiam); In re J.M.S., 43 S.W.3d 60, 63 (Tex.App.-Houston [1st Dist.] 2001, no pet.). In so doing, we have emphasized

The United States Supreme Court has unanimously held that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." ... It also unanimously held that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." .. . For these reasons, the United States Supreme Court places termination of parental rights cases in the same category as criminal cases and analogizes a parent losing parental rights to a "defendant resisting criminal conviction" because both seek "to be spared from the State's devastatingly adverse action."
In re J.M.S., 43 S.W.3d at 63 (quoting M.L.B. v. S.L.J., 519 U.S. 102, 103, 117 S.Ct. 555, 565, 568, 136 L.Ed.2d 473 (1996)); see also Bermea, 265 S.W.3d at 39.
[18] McCULLOUGH at 66.
[19] The majority asserts, "Following J.O.A. and the Texas Supreme Court's holding in M.S., we uphold the requirement announced in the Strickland's second prong, and we place the burden on the father to show that the outcome of this trial would have been different had counsel provided him with a good defense." Justice Keyes, in her concurring and dissenting opinion, asserts that the standard is that Valencia's "parental rights would probably not have been terminated but for his counsel's ineffective performance at trial."
[20] Our concurring colleagues assert that the issue of constructive denial of counsel "is not presented by this case." However, Valencia expressly presents this as his first issue in his briefing, and this Court has an obligation to directly address the issue. See TEX. R. APP. P. 47.1.

Our colleagues further assert that the panel has conducted a deficient performance and prejudice evaluation and there is "no reason to presume prejudice because the panel found prejudice." The panel did highlight some of the many significant failures of Valencia's trial counsel to act on Valencia's behalf throughout the pre-trial, trial, and post-trial stages of the proceedings below. However, these collective failures demonstrate that Valencia, in contrast to the defendant in Bell, received no meaningful assistance of counsel at all. Valencia's trial was "presumptively unfair." Bell, 535 U.S. at 695-96, 122 S.Ct. at 1851.
The panel did conclude, as asserted by our concurring colleagues, that the post-trial representation of Valencia by his trial counsel was essentially inert, due in part by his failure to challenge the legal sufficiency of the evidence to support the trial court's finding that Valencia had "endangered" the child. However, the panel, pursuant to Texas Supreme Court authority, addressed the legal sufficiency of the evidence in regard to the trial court's finding of "endangerment" only after concluding that Valencia was constructively denied his right to counsel. See In re J.O.A., 283 S.W.3d at 344-47 (addressing legal sufficiency point not preserved in statement of appellant points as a result of ineffective assistance of counsel).
Thus, the panel addressed the threshold issue of ineffective assistance, and its holding that Valencia was constructively denied his right to counsel was not, as the majority asserts, an "alternative holding."
[21] In accord with the United States Supreme Court's explanation of the second prong of Strickland in regard to deficient performance claims, the Texas Supreme Court has recently explained that when counsel fails to file a statement of appellate points, a parent must establish the prejudice prong of Strickland by "demonstrate[ing] that he could prevail on appeal" on the issues counsel failed to preserve. In re B.G., 317 S.W.3d 250, 256 (Tex. 2010) (emphasis added). Thus, the law does not require Valencia to show that the outcome at trial would have been different. Again, the critical question on appeal is whether the appellate court can justifiably rely on the outcome of the proceeding. Strickland, 466 U.S. at 691-92, 104 S.Ct. at 2067.
[22] In post-submission briefing, DFPS argues that Valencia cannot bring an ineffective assistance of counsel claim because he had no right to statutorily appointed counsel as he did not "respond in opposition" when he was served on November 16, 2006, file an affidavit of indigency, and seek appointment of counsel. See TEX. FAM.CODE ANN. § 107.013 (Vernon Supp. 2009). DFPS asserts that Valencia must have retained his trial counsel.

When trial counsel first acted on behalf of Valencia by filing the September 6, 2007 motion for continuance, he did so using a form provided by DFPS. This fact does not support that Valencia had at that time retained trial counsel as his counsel. An attorney may not unilaterally create an attorney-client relationship with a person; that person must take some express or implied act to retain counsel. See Span Enter. v. Wood, 274 S.W.3d 854, 858 (Tex.App.-Houston [1st Dist.] 2008, no pet.). Moreover, in January 2008, trial counsel filed Valencia's answer, in which he stated "NOW COMES the undersigned duly appointed attorney ad litem for JOE LEWIS VALENCIA...." (Emphasis added.). Thus, the record clearly reflects that trial counsel was acting as Valencia's court-appointed attorney.
Nevertheless, DFPS, in its second motion for en banc reconsideration, argues that Valencia did not have the right to effective assistance of counsel because "he did not have a right to statutorily appointed counsel" and trial counsel's representation of Valencia was based on trial counsel's (and, apparently, the trial court's) misunderstanding of the scope of his appointment, that is, he had only been appointed to represent the `unknown father,' a separate party who was entitled to counsel because the unknown father had not filed with the paternity registry and both his identity and location were unknown."
In support of this argument, DFPS relies on In re V.G., No. 04-08-00522-CV, 2009 WL 2767040, at *12 (Tex.App.-San Antonio Aug. 31, 2009, no pet.) (mem. op.) (holding parent who retained counsel in parental rights termination case was not entitled to raise ineffective assistance of counsel claim) and In re V.N.S., No. 13-07-00046-CV, 2008 WL 2744659, at *5 (Tex.App.-Corpus Christi July 3, 2008, no pet.) (mem. op.) (holding right to effective assistance of counsel is limited to "cases where indigent parents are appointed counsel and where parental rights are being wholly terminated").
However, as explained by the Fort Worth Court of Appeals,
Just as the Sixth Amendment recognizes an accused's right to counsel and that counsel is necessary to produce fair and just results, the statutory guarantee of counsel recognizes a parent's right to counsel and imports that counsel's skill and knowledge is necessary to accord parents in termination proceedings sufficient opportunity to meet the state's "awesome authority" to terminate their parental rights. Thus, the State of Texas has recognized the importance of counsel for parents in termination proceedings. Considering the State's parens patriae interest in promoting the welfare of the child, the statutorily granted right to counsel implies that counsel is necessary to an accurate and just result.
In re K.L., 91 S.W.3d 1, 10-11 (Tex.App.-Fort Worth 2002, no pet.) (emphasis added). Simply put, a parent who can retain counsel should not be deprived of the right to effective assistance of counsel in a proceeding to terminate his parental rights merely because he can afford to hire a lawyer. Implicit in the Texas Legislature's granting of counsel upon an indigent parent once the State has instituted formal proceedings to terminate his parental rights "is recognition of a parent's right to counsel in termination proceedings." Id. at 10. Moreover, there is no meaningful cure, in the absence of a right to effective assistance of counsel, for a parent whose parental rights are erroneously terminated due to counsel's deficiencies. Id. at 11. A claim for civil malpractice seeking monetary damages is "wholly inadequate" to compensate a parent for the loss of his parental rights in a proceeding where counsel was ineffective. Id. A claim for ineffective assistance is the only "meaningful redress" for such a parent, whether counsel was appointed or retained. See id. Thus, whether trial counsel was appointed pursuant to the Family Code, simply appointed, or retained, Valencia was entitled to representation necessary to ensure that the trial was fair. See Strickland, 466 U.S. at 685, 104 S.Ct. at 2063.
[23] Criminal history records are public records that must be authenticated before they are admissible. See Hull v. State, 172 S.W.3d 186, 189-90 (Tex.App.-Dallas 2005, pet. ref'd); Carlock v. State, 99 S.W.3d 288, 295 (Tex.App.-Texarkana 2003, no pet.). The requirement of authentication is a "condition precedent to admissibility." TEX.R. EVID. 901(a). Authentication of a public record requires evidence that a purported public record is from the public office where items of that nature are kept. TEX.R. EVID. 901(b)(7). A public record can be self-authenticating if the document (1) bears "a seal purporting to be that of ... any State ... and a signature purporting to be an attestation or execution" or (2) purports "to bear the signature in the official capacity of an officer or employee of [the State], having no seal, if a public officer having a seal and having official duties in the [State] of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine." TEX.R. EVID. 902(1), (2). In Carlock, uncertified copies of existing judgments of the defendant's alleged prior convictions were inadmissible because the defendant's parole officer was unable to provide the proof necessary for authentication that the judgments were from the public office responsible for maintaining those records. 99 S.W.3d at 295.

None of the copies of documents offered by DFPS to prove that Valencia had previously been convicted of several misdemeanors and state jail felonies was authenticated. Washington, like the parole officer in Carlock, could not have authenticated the records. See id. Thus, the unauthenticated criminal history records were inadmissible. Id. However, because trial counsel did not object to their admission, Petitioner's Exhibit No. 1 must be considered in a sufficiency review. See TEX.R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."); Tear v. State, 74 S.W.3d 555, 559 (Tex.App.-Dallas 2002, pet. ref'd) (when reviewing legal sufficiency, courts "look to all the evidence in the record, including admissible and inadmissible evidence, and direct and circumstantial evidence"); see also Farley v. Farley, 731 S.W.2d 733, 734 (Tex.App.-Dallas 1987, no writ) (applying rule 802 and explaining that unauthenticated judgment of another state's court, which would be hearsay, was not denied probative value when admitted without objection).
[24] Boyd references section 15.02(1)(E), the predecessor to Texas Family Code section 161.001(1)(E).
[25] At oral argument, this Court invited briefing on the issues as to whether it could take judicial notice of whether Valencia was or was not subsequently convicted of this offense and whether we could consider any such information in deciding the issues presented. After considering the arguments of the parties, the panel concluded that we may not take judicial notice of a conviction that was not in existence at the time of trial. See Brown v. Brown, 236 S.W.3d 343, 349 (Tex. App.-Houston [1st Dist.] 2007, no pet.). In conducting its analysis, an appellate court is bound by the record containing the evidence that was before the trial court at the time it entered its decree. See Univ. of Tex. v. Morris, 162 Tex. 60, 344 S.W.2d 426, 429 (1961). "It is axiomatic that an appellate court reviews the actions of a trial court based on the materials before the trial court at the time it acted." Hamm v. Millennium Income Fund, L.L.C., 178 S.W.3d 256, 272 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (quoting Methodist Hosps. of Dallas v. Tall, 972 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1998, no pet.)).
[26] See also Padilla v. Dep't of Family and Protective Servs., No. 01-07-00313-CV, 2008 WL 525750, at *1-2 (Tex.App.-Houston [1st Dist.] Feb. 28, 2008, no pet.) (mem. op.) (criminal history plus testimony as to multiple prior referrals with DFPS); Callahan v. Brazoria County Children's Protective Servs. Unit, No. 01-01-00916-CV, 2003 WL 21299952, at *1 (Tex.App.-Houston [1st Dist.] June 5, 2003, no pet.) (mem. op.) (criminal history plus psychiatrist's testimony that father had propensity for violence and anti-social personality disorder, mother's testimony about father's violence towards family, and father's testimony about marijuana use).
[27] See also In re H.G.H., No. 14-06-00137-CV, 2007 WL 174371, at *9 (Tex.App.-Houston [14th Dist.] Jan. 25, 2007, no pet.) (mem. op.) (holding "[a]ppellant's repeated incarceration, continuing propensity towards criminal conduct, failure to support [the child], and failure to complete, or make a good-faith effort to complete, the court-ordered family services constitute a course of conduct which endangered the physical or emotional well-being of [the child]").
[28] In its third motion for en banc reconsideration, DFPS, in an argument that it did not make to the trial court, in its briefing to this Court, or in its oral argument to this Court, asserts that Valencia endangered the child by not complying with the court ordered family service plan. DFPS asserts that Valencia had a "responsibility to comply with the terms of the Department's service plan by court order," regardless of whether he "agreed" to the plan, and DFPS cites to Texas Family Code section 263.103, which it asserts says "plan may take effect even if Department files it without parent's signature." While section 263.103 provides that the "plan takes effect... when the department ... files the plan without the parents' signatures," DFPS ignores the remainder of the statute. See TEX. FAM.CODE. ANN. § 263.103(d) (Vernon 2008). The statute also requires that "the child's parents and the representative of the department... shall discuss each term and condition of the plan" and "[i]f the department ... determines that the child's parents are unable or unwilling to sign the service plan, the department may file the plan without the parents' signatures." Id. § 263.103(a), (c). The record contains no evidence that DFPS complied with its statutory requirements before filing the plan. The Family Code does provide for termination of parental rights if a parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent." TEX. FAM.CODE.ANN. § 161.001(1)(O) (Vernon Supp. 2009). However, even though the trial court ordered Valencia to comply with the family service plan, the record contains no evidence regarding whether or not Valencia did so. Moreover, DFPS did not even ask the trial court to consider this section as a ground for terminating Valencia's parental rights, and the trial court made no such finding.
[29] In its third motion for en banc reconsideration, DFPS asserts that Valencia, after the State, in March 2007, dismissed the case against him for the offense of aggravated robbery, "never took any action to care for or support the child in the full year when he was not subject to incarceration." The majority asserts that Valencia, "when not incarcerated," had not "seen the child, paid support, or made arrangements to provide [the child] with food, clothing, shelter or care" or "inquired about or supported the child or made any effort to see to her needs." However, as noted above, the trial record in no way supports the assertions of DFPS or the majority.

First, the record is unclear as to if, or for how long, Valencia was out of jail after the State dismissed in March 2007 the aggravated robbery case. In fact, during the "full year" that DFPS asserts that Valencia was not incarcerated, the clerk's record shows that DFPS, on September 6, 2007, drafted an "Unopposed Motion for Continuance," which was then offered by Valencia's trial counsel to bench warrant Valencia out of jail.
Second, even if Valencia was out of jail for the "full year," the record is silent as to any of Valencia's actions or omissions in regard to the child prior to January 2008. In her brief testimony, Washington stated that Valencia, "since" January 2008, when "he offered to take a paternity test," which later revealed that he is the father of the child, had not "contact[ed]" DFPS or attempted "to check" on the child. The remainder of the reporter's record does not address any acts or omissions of Valencia in regard to the child from March 2007 to January 2008.
More importantly, DFPS simply did not present any evidence that Valencia "never" cared for the child or failed to act regarding child support or the provision of food, clothing, shelter, or care during the pendency of the case.
Third, contrary to the majority's assertions, the 111-page clerk's record, consisting of the usual pleadings, orders, and docket sheets, contains no evidence regarding any act or omission of Valencia in regard to the child. Heiskill's affidavit testimony regarding why the child was taken from the mother and placed into DFPS's care mentions Valencia only to say that he was in jail pending trial on the robbery case and could not be interviewed because he was in quarantine. And, as discussed above, a family service plan was filed with the trial court, but the record includes no progress reports or any information regarding Valencia's compliance or failure to comply with the plan.
In sum, the majority essentially asserts that the trial court could have inferred that Valencia had engaged in conduct that actually endangered the child from Washington's answer to these two questions (1) "And has he made any attempts to check on the welfare of the child?" Answer: "No" and (2) "Based on over 10 years of repeated criminal history including assault of the mother, are you asking that Joe Valencia's rights be terminated and he has engaged in conduct that endangers the physical and emotional well-being of the child?" Answer: "Yes." This does not constitute clear and convincing evidence that Valencia had actually endangered the child.
As noted above, to "infer" a fact, one "must be able to deduce that fact as a logical consequence of other proven facts." Marshall Field Stores, Inc. v. Gardiner, 859 S.W.2d 391, 400 (Tex.App.-Houston [1st Dist.] 1993, writ dism'd w.o.j.). Stated another way, to be legitimate or permissible, an inference must be deduced as a logical consequence of the facts presented in evidence, and there must be a logical and rational connection between the facts in evidence and the fact to be inferred. United States v. Michelena-Orovio, 702 F.2d 496, 504 (5th Cir.), aff'd on reh'g, 719 F.2d 738 (5th Cir.1983) (en banc). Even if we accord the sparse record with the meaning gleaned by the majority, Washington's two answers, unsupported by any other evidence in the record, did not give the trial court, as the fact finder, a basis from which it could have reasonably inferred and formed a firm belief or conviction that Valencia had actually "endangered" the child.
[30] Contrary to the assertion of the majority, the panel does not "excuse" Valencia's "abandonment" of his child. Texas Family Code section 161.001(1)(N) provides for termination of parental rights if a parent "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of [DFPS] ... for not less than six months, and ... the department ... has made reasonable efforts to return the child to the parent; ... the parent has not regularly visited or maintained significant contact with the child; and ... the parent has demonstrated an inability to provide the child with a safe environment[.]" TEX. FAM.CODE. ANN. § 161.001(1)(N) (Vernon Supp. 2009). As revealed in the trial transcript, DFPS did not even ask the trial court to consider "abandonment" as a ground for terminating Valencia's parental rights, and the trial court made no such finding.
[31] ORIGINALISM at 26.
[32] DORNER at 10.
[1] TEX. FAM.CODE ANN. § 263.405(i) (Vernon 2008).
[2] Id. § 161.001(1)(E) (Vernon Supp.2010) (providing that court may order termination of parent-child relationship if court finds by clear and convincing evidence that parent has "engaged in conduct or knowingly placed the child with persons who engage in conduct which endangers the physical or emotional well-being of the child[.]").
[3] In the statement of points, trial counsel raised a single sufficiency point, asserting that there "is no evidence to support the court's finding that termination of the Respondent's parental rights is in the best interest of the child." This point is not sufficiently specific to preserve the father's contentions on appeal that the evidence is legally and factually insufficient to support the trial court's finding that he violated family code section 161.001(1)(E). See TEX. FAM.CODE ANN. § 263.405(i) (requiring that issues be "specifically presented" in statement of points); In re J.J.R., 302 S.W.3d 436, 443-44 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (holding that points that stated that there was "no evidence to support the ruling," and there was "factually ... [and] legally insufficient evidence to support the ruling on both grounds for termination and on best interest," were not sufficiently specific to preserve challenge to sufficiency of evidence to support finding of violations of specific provisions of family code, although it did preserve challenge to sufficiency of evidence as to court's "best interest" finding).
[4] The Fourteenth Court has held likewise applied In re J.O.A. See In re C.W. Jr., No. 14-09-00306-CV, 2009 WL 4694946, at *2 (Tex. App.-Houston [14th Dist.], December 10, 2009, no pet.) (mem. op.) (holding that reviewing court could not consider complaints that evidence was legally and factually insufficient to support termination because there was no timely statement of points raising such issues, but reviewing ineffective assistance of counsel complaint not raised in statement of points because of holding in In re J.O.A.).